**Charles R. MARTIN, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 06A05–0004–PC–149.**

Court of Appeals of Indiana.

Dec. 11, 2000.

Rehearing Denied Feb. 21, 2001.

**138**

Susan K. Carpenter, Public Defender of Indiana, Jeffrey R. Wright, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Charles Martin appeals from the trial court's denial of his petition for post-conviction relief which alleged that his convictions for murder and kidnapping violated the Double Jeopardy clauses of the United States and Indiana Constitutions. We affirm.

### Issues

Martin raises two issues for our review, which we restate as follows:

1. Whether his convictions for both murder and kidnapping violate the principles of Double Jeopardy; and

2. Whether collateral estoppel requires that his conviction of kidnapping be vacated.

### Facts and Procedural History

In 1974, Martin and Lester French were involved in the kidnapping, rape and murder of Kathy Wylie. Martin was charged with first degree murder, kidnapping, robbery, and rape. He entered a plea of guilty to all charges, and was sentenced to death for murder, life imprisonment for kidnapping, and consecutive sentences of thirty years each for robbery and rape. The death sentence was subsequently commuted to life imprisonment.

In 1999, Martin filed a petition for post-conviction relief, alleging that his convictions for murder committed while engaged in the crime of kidnapping and kidnapping violate the Double Jeopardy provisions of the federal and state constitutions. Because Martin's petition raised a question of law, the trial court entered its order denying post-conviction relief without holding a hearing pursuant to each side's motion for summary disposition. The order states, in pertinent part, as follows:

[Martin's] Amended Petition for Post Conviction Relief essentially raises one salient issue, to-wit: whether or not Martin's convictions for Murder in the

First Degree, under Count I, and Kidnapping, under Count II, can stand separately as not being violative of double jeopardy. Martin received life sentences on both convictions. He seeks to vacate the Kidnapping conviction, claiming that it violates double jeopardy.

\* \* \*

Firstly, the Court rules that Martin's convictions for First Degree Murder and Kidnapping are not violative of double jeopardy. They should stand as originally entered, and neither should be vacated.

Secondly, however, even if this Court were to determine· that the convictions for First Degree Murder and Kidnapping cannot stand because they violate double jeopardy, it could nevertheless not grant Martin's relief under the parameters of *Taylor v. State,* 717 N.E.2d 90 (Ind.1999).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Charles R. Martin's Amended Petition for Post Conviction Relief should be and the same is hereby overruled and denied, summarily and without hearing. R. 310–11. Martin now appeals.

*Discussion and Decision*

### I. Double Jeopardy

Martin first alleges that the trial court erred in denying his petition for post-conviction relief because his conviction for kidnapping is in violation of the principles of double jeopardy due to his conviction for murder being based upon the killing of the victim while engaged in the crime of kidnapping.

### A. Standard of Review

■ Our post-conviction rules do not afford the petitioner the opportunity for a "super-appeal." *Ben–Yisrayl v. State,* 729 N.E.2d 102, 105 (Ind.2000). Rather, they create a narrow remedy for subsequent collateral challenges to convictions. *Id.* The petitioner must establish his grounds for relief by a preponderance of the evidence. Ind. Post Conviction Rule 1(5). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. A party appealing from a negative judgment must establish that the evidence is without conflict and, as a whole, points unmistakably and unerringly to a conclusion contrary to that of the post-conviction court. *Bigler v. State,* 732 N.E.2d 191, 194 (Ind.Ct.App.2000), *trans. denied.* We accept the trial court's findings of fact unless they are clearly erroneous, but we do not defer to the trial court's conclusions of law. We examine only the probative evidence and reasonable inferences that support the post-conviction court's determination and we do not reweigh the evidence or judge witness credibility. *Id.*

### B. Appropriate Double Jeopardy Test

■ The Double Jeopardy Clause provides that no person "shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause yields three protections: (1) protection from subsequent prosecution for the same offense after an acquittal; (2) protection from subsequent prosecution for the same offense after conviction; and (3) protection from multiple punishments for the same offense. *Kennedy v. State,* 674 N.E.2d 966, 967 (Ind.1996). The purpose of the Double Jeopardy Clause is to "ensure that a court imposes no more punishment on a defendant than the legislature intended." *Spurlock v. State,* 718 N.E.2d 773, 779 (Ind.Ct.App.1999), *trans. denied.*

■ Federal double jeopardy claims are controlled by the "same elements" test set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In determining whether there are two offenses or one under *Blockburger,* the focus is on whether each statutory provision "requires proof of an additional

fact which the other does not." *Id. See also Willey v. State*, 712 N.E.2d 434, 445 (Ind.1999). Moreover, for our purposes, Martin's state double jeopardy claim is also controlled by the *Blockburger* analysis. A recent decision of our supreme court established for the first time that Indiana's Double Jeopardy Clause is not coterminous with its federal counterpart. *See Richardson v. State*, 717 N.E.2d 32 (Ind.1999). In *Richardson*, the court developed a two-part test for determining whether two convictions are permissible. "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution if, with respect to *either* the statutory elements of the charged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49 (emphasis in original).

■ The first aspect of an Indiana double jeopardy analysis, the "statutory elements" test, is consistent with the federal *Blockburger* test. Under the second aspect of the Indiana double jeopardy analysis, the "actual evidence" test, we must determine whether each offense was established by separate and distinct facts. As explained in *Richardson:*

> Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been

used to establish the essential elements of a second challenged offense.

*Id.* at 53. However, because *Richardson* announced "a new constitutional rule of criminal procedure . . . [it] is not available for retroactive application in post-conviction proceedings." *Taylor v. State*, 717 N.E.2d 90, 95 (Ind.1999).[1] Thus, Martin cannot, and acknowledges that he cannot, rely on the actual evidence test announced in *Richardson*, but is limited to the formulation that existed previously; that is, the same elements test.

## C. Murder and Kidnapping Convictions

Martin was charged with murder in the first degree and kidnapping as follows:

### COUNT I

. . . CHARLES R. MARTIN, on or about the 22nd day of July, 1974, at the County of Hamilton, did unlawfully and feloniously kill and murder one KATHY WYLIE while engaged in the crime of kidnapping, by unlawfully, feloniously and forcibly carrying away, decoying and kidnapping KATHY WYLIE from a place within the State of Indiana . . . with the felonious intention of carrying the said KATHY WYLIE away from said place within said State . . . and while engaged in the crime of kidnapping, did unlawfully and feloniously kill and murder KATHY WYLIE by unlawfully and feloniously striking and beating KATHY WYLIE in and about the head area with a wrench . . . and did hold the head of KATHY WYLIE under the surface of the White River, and that said KATHY WYLIE did then and there die from asphyxia by drowning. . . .

All of which is contrary to the form of the Statute in such cases made and pro-

---

1. In this respect, *Richardson* differs from cases such as *Spradlin v. State*, 569 N.E.2d 948, 951 (Ind.1991), which clearly established that it is reversible error for a trial court to instruct a jury that a "knowing" mens rea was sufficient to establish guilt for attempted murder, and *Bethel v. State*, 730 N.E.2d 1242, 1246 (Ind.2000), which explained for the first time how *Spradlin* applies to persons accused of aiding in attempted murder. Neither *Spradlin* nor *Bethel* announced a *new* rule of criminal procedure, but only explained what the law already was at the time of the decision. *See Simmons v. State*, 642 N.E.2d 511, 513 (Ind.1994).

vided, to-wit: Indiana Code Section 35–13–4–1(B)(4). . . .

## COUNT II

. . . CHARLES R. MARTIN on or about the 22nd day of, July, 1974, at the County of Madison, in the State of Indiana, did unlawfully, feloniously, and forcibly carry away, decoy, and kidnap KATHY WYLIE from a place within the State of Indiana . . . with the felonious intention of carrying the said KATHY WYLIE away from said place within said State. . . .

All of which is contrary to the form of the Statute in such case made and provided, to-wit: Indiana Code Section 35–1–55–1. . . .

R. 16–18.

In 1974, the time relevant to our discussion herein, Indiana Code section 35–13–4–1 read, in pertinent part, as follows:

(a) Whoever kills a human being either purposely and with premeditated malice or while perpetrating or attempting to perpetrate rape, arson, robbery, or burglary is guilty of murder in the first degree and, on conviction, shall be imprisoned in the state prison during life, unless the killing is one for which subsection (b) prescribes the death penalty.

(b) Whoever perpetrates any of the following acts is guilty of murder in the first degree and, on conviction, shall be put to death:

. . .

(4) Killing a human being while perpetrating or attempting to perpetrate a kidnapping.

Ind.Code § 35–13–4–1(a) and (b)(4) (1974). The crime of kidnapping was defined as:

Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state . . . is guilty of kidnapping, and, on conviction, shall be imprisoned in the state prison during life.

Ind.Code § 35–1–55–1 (1974).

Martin contends that because the State charged him with an unlawful and felonious killing occurring during the course of a kidnapping, all of the elements required to convict him of kidnapping were also required to convict him of murder, and double jeopardy prohibits his conviction and sentence for both crimes. The State counters that it charged and proved that Martin committed the intentional murder of Kathy Wylie and the allegation that said murder occurred in the course of a kidnapping served only to enhance the sentence from life imprisonment to death; thus, convictions for both offenses do not violate double jeopardy.

In a companion case to this one, and in the face of then-recent United States Supreme Court rulings regarding the constitutionality of death penalty statutes, our supreme court held that Indiana Code section 35–13–4–1(b) was unconstitutional. *French v. State*, 266 Ind. 276, 282, 362 N.E.2d 834, 838 (1977). *See also Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). However, the court also held that the "decision here by this Court does not reverse the Appellant's conviction for first degree murder. *Only the penalty is affected*, as Section 3 of Acts 1973, P.L. 328, provides for the separability of the provisions of Ind.Code § 35–13–4–1. That *penalty* must be vacated." *French*, 362 N.E.2d at 838 (emphasis added). The court then "remanded to the trial court with instructions to vacate the Appellant's death sentence and impose in its stead one of life imprisonment." *Id.* at 842.

According to this reasoning, the crime defined by Indiana Code section 35–13–4–1 is murder, the elements of which are 1) killing, 2) a human being, 3) purposely and with premeditated malice. "Occurring in the course of a kidnapping" is not one of the elements of the crime of murder: that the murder occurred in the course of a

kidnapping only served to elevate the penalty for the crime of murder to death rather than life imprisonment.[2] Thus, when Martin's sentence was commuted from death to life imprisonment due to the finding that the penalty provision of the statute was unconstitutional, the kidnapping became irrelevant to the murder conviction.[3] Under the *Blockburger* same elements test, murder in the first degree and kidnapping each require proof of at least one element which the other does not, and thus the two convictions survive double jeopardy scrutiny.

## II. Collateral Estoppel

Martin also contends that the doctrine of collateral estoppel requires us to find that his convictions violate double jeopardy. He argues that this case presents the same issue presented to the Henry County Circuit Court by his accomplice, Lester French, wherein the court vacated French's kidnapping conviction and sentence.[4]

■ Generally, collateral estoppel operates to bar subsequent relitigation of an issue or fact where that issue or fact was necessarily adjudicated in a former lawsuit and is then presented in a subsequent lawsuit. *Doe v. Tobias*, 715 N.E.2d 829, 831 (Ind.1999). In civil cases, Indiana no longer requires mutuality of estoppel and identity of the parties in the use of collateral estoppel. *Sullivan v. American Cas. Co. of Reading Pa.*, 605 N.E.2d 134, 137 (Ind.1992). Because a stranger to a prior litigation may now invoke the doctrine of collateral estoppel, the use is referred to as "nonmutual collateral estoppel."

■ However, this court has recently held for the first time that in criminal cases, the invocation of collateral estoppel requires mutuality of estoppel and identity of the parties. *Reid v. State*, 719 N.E.2d 451, 456 (Ind.Ct.App.1999), *cert. denied* — U.S. —, 121 S.Ct. 489, 148 L.Ed.2d 461 (2000). In so holding, we noted the rationale of the United States Supreme Court in declining to apply collateral estoppel in criminal cases:

> [I]n a criminal case, the Government is often without the kind of "full and fair opportunity to litigate" that is a prerequisite of estoppel. Several aspects of our criminal law make this so: the pros-

2. In 1974, kidnapping was not one of the crimes which could support a "felony-murder" conviction. Only rape, arson, robbery and burglary were enumerated in the statute in effect at that time. Today, however, kidnapping is one of the "felony-murder" crimes. Had the statute then read as the statute now does, Martin may have had a better argument, because it has long been held that a trial court may not convict and sentence a defendant for both murder and felony-murder where only one murder occurs. *See Martinez Chavez v. State*, 534 N.E.2d 731, 739 (Ind. 1989); *James v. State*, 274 Ind. 304, 305, 411 N.E.2d 618, 619 (1980); *Holland v. State*, 265 Ind. 216, 220, 352 N.E.2d 752, 756 (1976). Likewise, a conviction and sentence for both felony-murder and the accompanying felony violates double jeopardy because the conviction for murder while in the commission of a felony could not occur without proof of the accompanying felony. *Harris v. Oklahoma*, 433 U.S. 682, 683, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Eddy v. State*, 496 N.E.2d 24, 29 (Ind.1986). Such a conclusion is reached by the *Blockburger* same elements analysis.

3. If the death penalty provision of the statute had not been found unconstitutional and Martin was still subject to the death penalty due to the kidnapping, and were *Richardson* applicable to Martin's claim, the result may have been different. Under a *Richardson* analysis, the same evidence that supported the kidnapping conviction was also used to elevate murder to a death penalty crime, which is akin to elevating the felony level of a crime which in turn elevates the penalty. However, because *Richardson* is not applicable to this case, we need not engage in any such analysis.

4. Martin has included as an appendix to his Brief court documents from the Henry County Circuit Court proceedings in which French moved to correct his sentence. The State has requested that this appendix be stricken. Because we hold that collateral estoppel does not apply in this instance, we need not consider whether or not it is proper for this court to take judicial notice of the Henry County documents. Thus, the motion to strike is granted.

ecution's discovery rights in criminal cases are limited both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence; and it cannot secure appellate review where a defendant has been acquitted.

. . .

The application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law. It is frequently true in criminal cases that evidence inadmissible against one defendant is admissible against another. The exclusionary rule, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal. The same evidence, however, may be admissible against other parties to the crime "whose rights were [not] violated." In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual estoppel would be plainly unwarranted.

*Standefer v. United States,* 447 U.S. 10, 22–24, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (citations omitted).

■ Thus, in order to earn the benefit of the doctrine of collateral estoppel in this case, Martin would be required to show identity of parties, which he cannot do. The outcome of French's case with respect to double jeopardy has no bearing on this case. Thus, we decline to vacate Martin's conviction and sentence for kidnapping on the basis of collateral estoppel.

*Conclusion*

Martin's conviction and sentences for both murder and kidnapping do not violate the Double Jeopardy Clauses of our state or federal constitutions pursuant to the "same elements" analysis of *Blockburger.* Further, nonmutual collateral estoppel is not applicable to a criminal case and thus, Martin is not entitled to the benefit of a favorable outcome in his accomplice's case. Accordingly, the judgment of the trial court denying Martin's petition for post-conviction relief is affirmed.

Affirmed.

MATHIAS, J., and MATTINGLY, J., concur.