**John WESLEY, Jr., Appellant (Petitioner),**

v.

**STATE of Indiana, Appellee (Respondent).**

No. 27S04–0201–PC–10.

Supreme Court of Indiana.

May 30, 2003.

Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

### Case Summary

After a trial by jury John Wesley was convicted of criminal confinement, battery, intimidation and resisting law enforcement. The charges arose out of an alter-

cation between Wesley and his live-in girlfriend Virginia Isom. Wesley filed a successive petition for post-conviction relief in which he alleged that his trial counsel was ineffective for failing to obtain and use Isom's psychiatric records. The post-conviction court denied Wesley relief. On review the Court of Appeals reversed. Having previously granted transfer, we now affirm the post-conviction court.

### Facts and Procedural History

On April 9, 1991, residents of the Johnson Apartments in Marion, Indiana heard fighting from the one-room apartment shared by John Wesley and Virginia Isom. Except for Wesley and Isom there were no eyewitnesses to the altercation. However, neighbors in the apartment building heard a great deal of scuffling, loud banging noises, general cries for help, and shouts from Isom claiming "he's going to kill me." R. at 215.[1] The apartment manager called the police. Prior to police arrival, Isom left the apartment and locked herself in the communal bathroom at the end of the hallway. When officers of the Marion Police Department arrived, Wesley was standing in the hallway. After arguing with the officers and threatening one of the officers, Wesley was arrested. Isom, bleeding from a cut to her head, told the officers that Wesley had beaten her.

Wesley was ultimately charged with criminal confinement; battery by means of a deadly weapon; criminal deviate conduct;[2] intimidation; and resisting law en-

forcement. A jury trial was conducted on June 17–18, 1991. At trial, Wesley and Isom both testified that there was a skirmish but presented different accounts of exactly what happened in the course of the altercation. Isom said that at about 3:30–3:45 on the afternoon of April 9, 1991, she heard a thumping noise on the apartment door. She opened the door and saw Wesley kneeling on the floor. Isom believed Wesley was under the influence of alcohol and/or cocaine, and she helped him into bed. Wesley then requested a plate of food, and as Isom presented the food to him, Wesley knocked the plate out of her hand. While Isom was cleaning up the remains of the plate and food, Isom suggested that the two of them attend counseling. Wesley became enraged, kicked Isom, beat her with his hands, a lamp and a sawed-off shotgun, and pushed the barrel of the sawed-off shotgun under Isom's skirt. Upon hearing a noise coming from the stairway outside the apartment, Wesley allowed Isom to leave the apartment and go to the bathroom at the end of the hallway.

Wesley testified at trial that he had spent the morning and early afternoon hours of April 9, 1991, drinking wine and socializing with friends. He returned to the apartment sometime after three o'clock, walked in the door, and saw Isom cooking. He then said that Isom accused him of infidelity and when his back was turned she came after him with a "knife ... or other object." *Id.* at 366. Wesley

---

1. "R." refers to the trial court record. "P–C R." refers to the post-conviction court record. "Ex. A" refers to Isom's psychiatric records introduced at the post-conviction hearing as "Petitioner's Exhibit A"; the psychiatric records are a part of the post-conviction record, but they are not consecutively paginated with the rest of the post-conviction record so to avoid confusion we refer to them separately.

2. This charge arose from Isom's allegation that during the course of the altercation Wesley inserted the barrel of a shotgun into her vagina. The charge was dismissed on the first day of trial when Isom admitted the allegation was not true. Isom testified that she made the allegation because "[Wesley] said he was going to do it, I was going to say that [Wesley] did it." R. at 187.

reported grabbing Isom's wrists and throwing the object into the sink. He apparently released the grasp on her wrists, but shortly thereafter Isom pushed him, which caused him to fall into the door of the apartment and knock the lamp from its table. Wesley then grabbed Isom by her wrists again and the two of them wrestled on the bed. He testified that at some point during the scuffle both of them fell off the bed and Isom hit her head on the nightstand and on the shotgun, thus explaining the cut on her head. As they were wrestling, Isom began yelling for help. Wesley further explained that after Isom hit her head on the gun, she reached for it under the bed and that Wesley struggled to get the gun away from her. He testified the fight ended when Isom pushed him to the floor and retreated to the bathroom.

The jury returned a guilty verdict on all four counts.[3] On direct appeal, the Court of Appeals affirmed the convictions in a memorandum decision. *Wesley v. State,* No. 27A02–9110–CR–474, 594 N.E.2d 532 (Ind.Ct.App. May 18, 1992). On August 20, 1992, Wesley filed a pro se petition for post-conviction relief. On November 18, 1992, the post-conviction court entered an order denying the petition and Wesley did not appeal. Thereafter, on January 23, 1995, the Court of Appeals authorized Wesley to file a successive petition for post-conviction relief. Ind. Post–Conviction Rule 1(12). Wesley filed the petition on February 2, 1995, which he amended on June 12, 2000. Therein, Wesley alleged that his trial counsel was ineffective for failing to obtain and use Isom's psychiatric records. Dating to 1980, the records reveal

treatment Isom periodically received for psychiatric disorders.[4]

After conducting a hearing, the post-conviction court denied Wesley's petition. On review the Court of Appeals reversed concluding, "there is a reasonable probability that, had trial counsel obtained and used Isom's psychiatric records, Wesley would not have been convicted of criminal confinement and battery." *Wesley v. State,* 753 N.E.2d 686, 692 (Ind.Ct.App. 2001), *reh'g denied.* Having previously granted transfer we now affirm the post-conviction court.

### Standard of Review

■■■ The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. P–C. R. 1(5); *Curry v. State,* 674 N.E.2d 160, 161 (Ind. 1996). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing a negative judgment. *Id.* As such, the petitioner faces a rigorous standard of review. The petitioner must convince the court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Dewitt v. State,* 755 N.E.2d 167, 170 (Ind. 2001). In other words, "[t]his Court will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with

---

3. The guilty verdicts for intimidation and re-sisting law enforcement related to Wesley's confrontation with the police. They are not challenged in this appeal.

4. The first twenty-seven pages consist of records from 1996 and 1997. Ex. A at 2–28. Obviously, the records from 1996 and 1997 cannot be a part of the consideration as to whether Wesley's trial counsel was ineffective for failure to obtain them in 1991.

Indiana Post–Conviction Rule 1(6). We will reverse a post-conviction court's findings and judgment only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *Saylor v. State*, 765 N.E.2d 535, 547 (Ind.2002).

### Discussion

Wesley contends his trial counsel rendered ineffective assistance for failing to obtain and use Isom's psychiatric records. The records show that Isom was first hospitalized in 1980 for "inappropriate behavior with delusional thinking." Ex. A at 67. Isom was hospitalized again in 1983 when she told hospital staff that her niece had cut her with a razor and that she was "bleeding from head to toe." *Id.* at 90. The staff found no lacerations and only "old abrasions" on her body. *Id.* at 128. She was thus diagnosed as "delusional" and admitted for an "acute psychotic episode." *Id.* at 90, 92, 124. Six years later Isom was again admitted to a hospital after she was found partially clothed in a McDonald's restaurant. She told police that she feared someone was trying to hurt her but later told hospital staff that she had similar fears in the past and was delusional. During this hospital stay, Isom attempted to call police to report that her husband had killed five children in Cleveland. She also told hospital staff that her boyfriend was a biker and had threatened to kill her if she pressed charges against him.[5]

Wesley does not allege the records could or should have been introduced by trial counsel as substantive evidence. Rather, contending that Isom injured herself and then fabricated or fantasized that he attacked her, Wesley argues the records should have been discovered and used by trial counsel for the purposes of impeachment. Specifically he claims counsel should have used the records "to impeach [Isom] as to her ability to realistically recall the facts she was testifying to." Br. of Pet'r–Appellant at 17. In addressing this claim the post-conviction court concluded:

> Trial counsel was not ineffective for failing to present Isom's mental history or alleged pattern of self injury. [Wesley] has not demonstrated that such evidence was not [sic] relevant given the fact that the defense was predicated upon [Wesley's] claim that Isom was the aggressor and was injured when [Wesley] defended himself. [Wesley] did not claim at trial that Isom injured herself and then fabricated or fantasized an attack by her boyfriend. Therefore, [Wesley] has not shown that the evidence would have been relevant. Ind. Evid. R. 403. Further, Petitioner has not shown that the mental health records would have been proper impeachment. Ind. Evid. R. 608.

P–C R. at 144.

▌ Among other things, Wesley testified at trial that Isom approached him with a knife or other object and later brandished a shotgun. R. at 366, 371. Wesley admitted holding the shotgun during part of the encounter, although he claims that occurred when he was attempting to take it away from Isom. *Id.* at 371–74. Wesley also admitted that the two struggled and did not dispute that Isom was injured during the course of the struggle. Indeed,

---

5. Wesley also claims Isom's psychiatric records show a history of "self injury." Br. of Pet'r–Appellant at 9. However, our examination of the record shows not only is this claim speculative, but also the only reference to self injury occurred in 1997—a date beyond that which is relevant to this appeal. *See supra* note 4. Apparently Isom was taken to a hospital because of a cut to her head. Isom's sister informed hospital staff that the cut "may have been a self-inflicted injury." Ex. A at 12.

Wesley testified that he did not "purposely batter" Isom. *Id.* at 374.

Based on Wesley's testimony alone, the jury could conclude that Wesley touched Isom in a rude, insolent, or angry manner. *See* Ind.Code § 35–42–2–1 (West Supp. 1990). The jury could also conclude the touching occurred by means of a deadly weapon. *Id.* In like fashion, the jury could conclude, based on Wesley's own testimony, that he substantially interfered with Isom's liberty without her consent while armed with a deadly weapon. *See* I.C. § 35–42–3–3 (West Supp.1990). The question is whether Wesley engaged in the foregoing conduct "knowingly and intentionally."

 To establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish before the post-conviction court the two components set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Williams v. Taylor,* 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). First, a defendant must show that defense counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. This requires showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* at 687–88, 104 S.Ct. 2052. The objective standard of reasonableness is based on "prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. Second, a defendant must show that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

 At the time of Wesley's trial, evidence was considered relevant if it tended to prove or disprove a material fact or shed any light on the guilt or innocence of the accused. *Davidson v. State,* 558 N.E.2d 1077, 1088 (Ind.1990). Wesley did not explain to the post-conviction court, nor does he now explain how the use of Isom's psychiatric records to impeach Isom on "her ability to realistically recall the facts she was testifying to" would tend to prove or disprove his state of mind. Nor has Wesley ever explained how such impeachment would shed any light on his guilt or innocence. At best, Isom's psychiatric records were only marginally relevant. Counsel's representation cannot be deemed to have fallen below an objective standard of reasonableness by failing to obtain and use marginally relevant evidence.

### Conclusion

In this case Wesley has not carried his burden of demonstrating that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. Accordingly, we affirm the post-conviction court's judgment.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.