Roderick LEE, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 27A04–0705–PC–257.

Court of Appeals of Indiana.

Feb. 26, 2008.

Transfer Granted May 2, 2008.

---

Susan K. Carpenter, Public Defender of Indiana, Anne–Marie Alward, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

ROBB, Judge.

*Case Summary and Issues*

Roderick Lee appeals the denial of his petition for post-conviction relief. On appeal, Lee raises two issues, which we restate as whether the post-conviction court properly denied Lee relief on his claims of ineffective assistance of trial and appellate counsel. We affirm, concluding the post-conviction court properly denied Lee relief with respect to both of his claims.

*Facts and Procedural History*

This court related the following facts on Lee's direct appeal:

During the evening of September 26, 2000, Dell Riley and her ten-year-old daughter, Ashley, were at their home in Marion, Indiana. Ashley was in her bedroom and Riley was on the telephone when there was a knock at the door. As Riley opened the door, three young African–American men, later identified as

Lee, Jarvacus Cheney, and Antwon Drew, barged into the home, pointed guns at Riley, and demanded money. Lee wore a white jacket, had his hair in braids, and carried a small silver pistol. The other two men wore dark colored clothes, and Cheney carried a sawed-off shotgun.

While in the home, Lee threatened Riley and ordered her into her bedroom where another man emptied drawers and turned over her mattress looking for money. Ashley heard the noise and came downstairs. During the search, Lee did all of the talking and kept close to Riley and Ashley. Finding no money, Lee again pointed his gun at Riley and demanded money. Riley told Lee that she might have money in her purse, which she kept by the back door. While Lee was looking at the contents of the purse, Riley and Ashley opened the back door and ran to a neighbor's house to call the police.

*Lee v. State*, No. 27A05–0110–CR–452, slip op. at 2–3, 769 N.E.2d 711 (Ind.Ct.App., June 4, 2002), trans. denied. The State charged Lee with burglary, a Class B felony, and attempted robbery, a Class B felony.[1] The jury returned guilty verdicts on both charges. The trial court accepted the verdicts and sentenced Lee to twenty years for the burglary conviction and twenty years for the robbery conviction. The trial court also ordered the sentences to run consecutively, resulting in a total executed sentence of forty years. On direct appeal, this court affirmed Lee's convictions. *Lee*, slip op. at 11.

Following this court's decision, Lee filed a pro se petition for post-conviction relief. Lee then filed an amended petition with the benefit of counsel asserting claims of ineffective assistance of trial and appellate counsel. The post-conviction court conducted a hearing at which Lee's counsel testified.[2] Following the hearing, the post-conviction court issued findings of fact and conclusions of law denying relief. Lee now appeals.

*Discussion and Decision*

## I. Standard of Review

To obtain relief, a petitioner in a post-conviction proceeding bears the burden of establishing his claims by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Martin v. State*, 740 N.E.2d 137, 139 (Ind.Ct.App.2000). Moreover, when the petitioner appeals from a denial of relief, the denial is considered a negative judgment and therefore the petitioner must establish "that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens v. State*, 770 N.E.2d 739, 745 (Ind.2002), *cert. denied*, 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003).

## II. Ineffective Assistance of Counsel

To establish a violation of the right to effective counsel as guaranteed by the Sixth Amendment, the petitioner must establish both prongs of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind.2003). First, the petitioner must show counsel was deficient. *Id.* "Deficient" means that counsel's errors fell be-

---

1. The offenses were charged as Class B felonies because the State alleged Lee committed them while armed with a deadly weapon. *See* Ind.Code §§ 35–43–2–1 and 35–42–5–1.

2. The same attorney served as Lee's trial and appellate counsel.

low an objective standard of reasonableness and were so serious that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment. *Id.* Second, the petitioner must show that counsel's deficiency resulted in prejudice. *Id.* Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We need not address whether counsel's performance was deficient if we can resolve a claim of ineffective assistance based on lack of prejudice. *Wentz v. State,* 766 N.E.2d 351, 360 (Ind.2002). The same standard of review applies to claims of ineffective assistance of trial counsel and claims of ineffective assistance of appellate counsel. *Burnside v. State,* 858 N.E.2d 232, 238 (Ind.Ct.App.2006).

## A. Trial Counsel

▆▆▆▆ Lee argues counsel was deficient because he failed to argue to the trial court that entering judgments of convictions on burglary and attempted robbery violated the Indiana constitutional prohibition against double jeopardy. "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999) (emphasis in original). Lee does not argue that burglary and attempted robbery violate the statutory elements test. Instead, Lee argues the offenses violate the actual evidence test. To prove a double jeopardy violation based on the actual evidence test, "the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements

of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53. In making this determination, a reviewing court may consider the charging information, arguments of counsel, and final jury instructions. *McIntire v. State,* 717 N.E.2d 96, 100 (Ind.1999).

To convict Lee of burglary as a Class B felony, the State had to prove beyond a reasonable doubt that while armed with a deadly weapon, Lee knowingly or intentionally broke and entered Riley's home with the intent to commit a felony therein. *See* Ind.Code § 35-43-2-1. To convict Lee of attempted robbery as a Class B felony, the State had to prove beyond a reasonable doubt that while armed with a deadly weapon, Lee intentionally took a substantial step toward taking Riley's property by using or threatening the use of force. *See* Ind.Code §§ 35-41-5-1 and 35-42-5-1. The evidence presented at trial indicates Lee, Cheney, and Drew forced themselves through the front door of Riley's home. Once inside, Lee brandished a gun and demanded that Riley give him money. When Riley explained she did not have any money, Lee said, "[d]on't make me have to kill you bitch." Transcript at 40. Lee then ordered Riley into her bedroom while Cheney and Drew searched the house for money. When the search proved fruitless, Lee pointed his gun at Riley's face, stated that he would kill her, and again demanded that she give him money.

Lee argues there was a double jeopardy violation under the actual evidence test because the evidentiary facts used to establish the essential elements of burglary—Lee entering Riley's home while brandishing a gun and demanding money—also were used to establish the essential elements of attempted robbery. The

State counters that there was no double jeopardy violation under the actual evidence test because the evidentiary facts established that the offenses were based on separate events; that is, the burglary was completed when Lee entered Riley's home and the attempted robbery was completed after the burglary when Lee pointed a gun at Riley's face and demanded that she give him money. In concluding there was no double jeopardy violation, the post-conviction court applied the same rationale:

> Here, the evidence at trial clearly established that Lee broke the close and entered Riley's residence with the intent to steal money, while armed with a pistol. This established burglary. The evidence further established that after entering the residence (and therefore after the burglary had been committed), Lee took Riley's purse from her (in the hopes that there was money in it) by threatening Riley and Ashley with a pistol, which threats, not surprisingly, frightened Riley and Ashley. This evidence established the attempted armed robbery. Thus, there was no violation of the actual evidence test. The Court finds that it is particularly likely that the jury used this specific evidence to convict Lee of the crimes, as the prosecutor highlighted this specific evidence as she reviewed the elements of the crimes in her closing argument.

Appellant's Appendix at 41–42.

Had the State presented its case in this manner, Lee's convictions of burglary and attempted robbery would not have violated the actual evidence test. Cf. *Williams v. State,* 771 N.E.2d 70, 75–76 (Ind.2002) (concluding the defendant's convictions of burglary and intimidation did not violate the actual evidence test because the defendant's act of forcibly entering the victim's apartment was "separate and distinct" from his subsequent act of pointing a gun at the victim's head). Our review of the record, however, indicates the State did not present its case in the manner described by the post-conviction court. Instead, during her closing argument, the prosecutor argued that Lee's forcible entry into Riley's home established the breaking and entering element of burglary and that it also established the substantial step element of attempted robbery:

> The Attempted Armed Robbery—it's attempted because they didn't actually steal anything. There was no money found in the home. They didn't actually take anything that's why it's Attempted Armed Robbery. They demanded money. I have to prove that they took a step and attempted, they took a substantial step in, in attempting to rob Dell. *Obviously, they took a substantial step. They barged into her home.* They had a gun. They threatened and they used a gun and put her in fear, her and Ashley. Robbery is taking the property of another by using or threatening the use of force or putting the person in fear. That's, that's robbery ladies and gentlemen.

Tr. at 142 (emphasis added). The charging information for attempted robbery was included as a final jury instruction and expanded on this point by alleging that Lee committed the substantial step element of attempted robbery "by entering Dell Riley's residence ... displaying a silver handgun and making threats to kill Dell Riley and her daughter ... if Riley did not give him and his companions money." Appellant's App. at 54. Moreover, the remaining jury instructions do not specify which evidentiary facts established the essential elements of burglary and which established the essential elements of attempted robbery. Cf. *Redman v. State,* 743 N.E.2d 263, 268 (Ind.2001) (concluding the defendant's convictions of conspiracy

to commit murder and criminal confinement did not violate the actual evidence test in part because the final jury instruction on conspiracy permitted the jury to find the overt act element established based on any one of four evidentiary facts, and only one of these facts was used to establish criminal confinement).

We emphasize the State could have established the substantial step element of attempted robbery without relying on the evidentiary facts it used to establish the essential elements of burglary. The evidence presented at trial indicates that Lee entered Riley's home while brandishing a gun and demanded that Riley give him money. After ordering Riley into her room, and after Cheney and Drew unsuccessfully searched the house for money, Lee then pointed his gun at Riley's face and again demanded that she give him money. The State could have used these latter evidentiary facts—Lee pointing his gun at Riley and again demanding money—to establish the substantial step element of attempted robbery. However, aside from eliciting these evidentiary facts from Riley during her testimony, the State did not invite the jury, through closing argument, final instructions, or otherwise, to use them as a basis for finding that the State had proved the substantial step element of attempted robbery.

Likewise, regarding the intent to commit a felony element of burglary, the State could have emphasized Drew's testimony, which detailed how he, Lee, and Cheney devised a plan to enter Riley's home and rob her. However, the prosecutor did not offer this testimony as proof of Lee's intent to commit a felony. To the contrary,

the prosecutor explained she "didn't even have to put [Drew] up there but I chose to go ahead and present to you what I knew," tr. at 126, and further explained to the jury that "if you want to just totally discount [Drew's] testimony, I have given you enough evidence," *id.* at 127. When Lee's counsel attacked Drew's credibility during closing argument, the prosecutor again emphasized that Drew's testimony was not important to the State's case: "We didn't need [Drew] to convict Roderick. What more can I give you than positively identified by two (2) witnesses? What more can I give you? Disregard [Drew's] testimony if you want. I didn't need it for you." *Id.* at 138.

Thus, our review of the record, specifically the charging information for attempted robbery, the State's closing argument, and the final jury instructions, convinces us there is a reasonable possibility the jury used the same evidentiary facts to establish the essential elements of burglary and the substantial step element of attempted robbery.

Notwithstanding this conclusion, the question remains whether Lee's convictions of burglary and attempted robbery violate the actual evidence test and, if so, whether counsel's failure to raise this issue constitutes deficient performance. In this respect, although we concluded there is a reasonable possibility the jury used the same evidentiary facts to establish the essential elements of burglary and the substantial step element of attempted robbery, there is still no double jeopardy violation based on a literal application of the actual evidence test.[3] As our supreme

---

3. Nor are we convinced there was a double jeopardy violation based on a literal application of the *Richardson* actual evidence test; that is, we cannot conclude there is a reasonable possibility the jury used the same evidentiary facts to establish the essential elements

of burglary and the essential elements of attempted robbery. Moreover, although Lee appears to argue there was a double jeopardy violation based on a literal application, *see* appellant's br. at 9 ("[T]here is a reasonable probability that the evidentiary facts used to

court explained in *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.2002), "under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." This court, however, has questioned whether a literal application of the actual evidence test is warranted because our supreme "has routinely applied the ... test such that where the facts establishing an essential element of one offense also establish all of the essential elements of a second challenged offense, the two convictions standing together violate double jeopardy." *Alexander v. State*, 768 N.E.2d 971, 976 (Ind.Ct.App. 2002) (emphasis in original), aff'd *on reh'g*, 772 N.E.2d 476, *trans. denied; id.* at 975 n. 5 (citing pre-July 2001 cases that apply the *Richardson* actual evidence test in a relaxed manner); *see also Guyton v. State*, 771 N.E.2d 1141, 1149 (Ind.2002) (noting that there has been "widespread confusion reflected in the Court of Appeals cases attempting to apply *Richardson*" and that such confusion "requires us to try to explain how future cases are to be analyzed") (Boehm, J., concurring in result).

The conflict over proper application of the actual evidence test creates a dilemma in the context of Lee's ineffective assistance of counsel claim: can counsel be deemed deficient when a literal application of the actual evidence test yields no double jeopardy violation, but a more relaxed application does? This dilemma is compounded by our standard of review, which requires Lee to demonstrate the evidence unerringly and unmistakably leads to a conclusion that counsel was deficient and that the deficiency resulted in prejudice.

We addressed a similar dilemma in *Ross v. State*, 877 N.E.2d 829 (Ind.Ct.App.2007), *trans. denied*. The issue in Ross was not whether counsel was deficient for failing to raise a double jeopardy issue, but whether counsel was deficient for failing to object to the trial court's instruction on voluntary manslaughter as a Class A felony and as a lesser included offense of murder. At the time of the defendant's trial in *Ross*, it was well established that a trial court could not tender an instruction on a lesser included offense unless the lesser offense was "factually" or "inherently" included in the offense charged. *Wright v. State*, 658 N.E.2d 563, 567 (Ind.1995).

Applying the rule expressed in *Wright* to the defendant's case, we concluded that voluntary manslaughter as a Class A felony was neither factually nor inherently included as a lesser offense of murder. At the same time, however, we noted that appellate courts had not applied this rule consistently. *Ross*, 877 N.E.2d at 836; *see also id.* at 837 ("[the rule expressed in *Wright*] has been overlooked in cases where the proposed lesser offense is voluntary manslaughter because our supreme court and this court have stated repeatedly, without realizing significant distinctions between voluntary manslaughter as a Class A felony and voluntary manslaughter as a Class B felony, that the offense is inherently a lesser included offense of murder.") (Robb, J., concurring in result). Based on this discrepancy, we concluded that "we cannot deem trial counsel ineffective for failing to note an incorrect or overbroad statement of the law that apparently has escaped the notice of our courts for twenty years." *Id.* at 836. In other

---

establish the elements of Attempted Armed Robbery may have also been used to establish all the essential elements of burglary ...."),

the thrust of his argument is that there was a double jeopardy violation based on a relaxed application, *see id.* at 7–10.

words, although literal application of the rule expressed in *Wright* indicated it was erroneous for the trial court to give the instruction, we declined to conclude counsel was deficient because appellate courts had not applied the rule consistently.

As the foregoing indicates, application of the *Richardson* actual evidence test has yielded inconsistent results similar to those expressed in *Ross* and, as the *Ross* court observed, "[o]ur task is not to review alleged errors in [the defendant's] trial as if this case were on direct appeal, but to assess the competency of his trial counsel." *Id.* The standard for assessing the competency of Lee's counsel on appeal from the denial of post-conviction relief is whether the evidence unmistakably and unerringly leads to a conclusion that counsel was deficient. Inconsistent application of the *Richardson* actual evidence test convinces us that Lee has not carried this high burden. Thus, it follows that Lee did not receive ineffective assistance of counsel based on counsel's failure to raise the double jeopardy issue.

### B. Appellate Counsel

Lee argues appellate counsel also was ineffective for failing to raise the double jeopardy issue. To establish counsel was deficient, Lee must show that 1) the unraised issue was significant and obvious from the record and 2) the unraised issue is clearly stronger than the issues that were presented. *Bieghler v. State,* 690 N.E.2d 188, 194 (Ind.1997), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Our supreme court has stated that where ineffectiveness is based on failure to raise an issue on direct appeal, counsel's performance "will ... be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to appellate counsel." *Ben–Yisrayl v. State,* 738 N.E.2d 253, 261

(Ind.2000), *cert. denied* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002); *see also Bieghler,* 690 N.E.2d at 194 ("[T]he reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.").

Lee argues counsel could have relied on *Guyton,* 771 N.E.2d 1141, *Pierce v. State,* 761 N.E.2d 826 (Ind.2002), and *Spivey,* 761 N.E.2d 831, to support a double jeopardy argument, as these cases were decided after Lee was sentenced in July 2001. *Guyton,* however, was decided in July 2002, after this court handed down its decision on Lee's direct appeal, and *Pierce* and *Spivey* do not sufficiently alter Indiana's double jeopardy jurisprudence so as to make the issue significant and obvious. To the contrary, our supreme court's decision in *Spivey* supports a conclusion that counsel was not deficient because its language indicates that literal application of the *Richardson* actual evidence test is the proper standard:

> The *Richardson* actual evidence test was carefully and deliberately crafted to provide a general formulation for the resolution of all actual evidence test claims. The language expressing the actual evidence test explicitly requires evaluation of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish *the essential elements* of a second challenged offense. The test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second chal-

lenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

761 N.E.2d at 832–33 (emphasis in original). Because cases decided after Lee was sentenced did not substantially alter Indiana's double jeopardy jurisprudence, we conclude Lee has failed to establish that appellate counsel was deficient for the same reasons we concluded Lee failed to establish that trial counsel was deficient. *See supra*, Part Part II.A.; *see also Burnside*, 858 N.E.2d at 238 (stating that the same standard of review applies to claims of ineffective assistance of trial counsel and claims of ineffective assistance of appellate counsel). Thus, it follows Lee did not receive ineffective assistance of counsel based on counsel's failure to raise the double jeopardy issue of direct appeal.

*Conclusion*

The post-conviction court properly denied Lee relief on his claims of ineffective assistance of trial and appellate counsel.

Affirmed.

BARNES, J., concurs.

KIRSCH, J., concurs in result with opinion.

KIRSCH, Judge, concurring in result.

I respectfully concur in result.

I do not believe that there is a reasonable possibility that the jury used the same evidentiary facts that establish the essential elements of Lee's burglary conviction to establish the essential elements of his attempted robbery conviction. As a result, I do not think that Lee's convictions for both crimes constituted a violation of dou-

ble jeopardy protections under the actual evidence test set forth by our Supreme Court in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). As a result, I do not reach the issues of effectiveness of trial and appellate counsel.

Applying the *Richardson* actual evidence test to this case, we must determine whether there is a reasonable possibility that the jury used the same evidentiary facts that establish the essential elements of Lee's burglary conviction to establish the substantial step element of his attempted robbery conviction. Had Lee been successful in committing the robbery—had Ms. Riley had a few dollars in her purse—there would be no double jeopardy issue. The burglary was complete when Lee, armed with a gun and harboring the requisite intent, broke and entered the Riley residence. When he did so, the burglary was complete. *See Williams v. State*, 771 N.E.2d 70, 75 (Ind.2002) ("When Williams broke into the apartment, the burglary was complete."). Had nothing else occurred, the evidence would have been sufficient to support Lee's conviction for burglary. *See Howard v. State*, 873 N.E.2d 685, 689 (Ind.Ct.App.2007) ("A defendant's intent may be inferred from the time, force, and manner of entry where there is no evidence that the entry was made with some lawful intent."). *See also Gray v. State*, 797 N.E.2d 333, 336 (Ind.Ct. App.2003).

Although Lee's burglary was complete upon his entry into the Riley residence, the attempted robbery was just beginning. After entry into the residence, Lee and his companions threatened Ms. Riley and her daughter with guns, ordered Ms. Riley to her bedroom, demanded money, emptied drawers, turned over a mattress and rifled through her purse looking for money. While Lee was rifling her purse, Ms. Riley

and her daughter escaped, ran to a neighbor's house, and called police.

Double jeopardy is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Spivey v. State,* 761 N.E.2d 831, 833 (Ind. 2002). Although Lee's entry into the Riley residence was a substantial step toward commission of the attempted robbery, it was only one of a number of such steps. To constitute a double jeopardy violation, there must be a reasonable possibility that the jury found that Lee broke and entered the Riley residence with the intent to commit robbery and that he abandoned any plan to rob Riley immediately upon his entry into her residence. To do so, the jury would have had to believe all of Ms. Riley's testimony and that of her daughter up to the point of Lee's entry into their residence and then have disbelieved all of their testimony after that point. I do not think that it is reasonable[4] for us to so conclude, and I would affirm the trial court in all respects.

---

4. As my colleagues have noted, since its adoption by a split court in *Richardson v. State,* 717 N.E.2d 32 (Ind.1999), our courts have struggled to apply the actual evidence test to resolve double jeopardy challenges. *See Vestal v. State,* 745 N.E.2d 249, 251–2 (Ind.Ct. App.2001) *trans. granted,* 773 N.E.2d 805 (Ind.2002)(strict application of *Richardson* actual evidence "would lead to absurd results" that our Supreme Court "could not have intended."). Justice Boehm has suggested that the Court has tacitly abandoned the actual evidence test. *Guyton v. State,* 771 N.E.2d 1141, 1149 (Ind.2002) (Boehm, J., concurring). He has also noted what he believes is "widespread confusion in the Court of Appeals cases attempting to apply *Richardson.*" *Id.*

This case provides an example of such confusion. Here, the four judges that have looked at the evidence, applied the test and reached two opposite conclusions. Although I believe that all four accurately state the test set forth in *Richardson,* they then apply the test to reach different conclusions. My two colleagues in the majority conclude that *Richardson* actual evidence test was violated; the learned trial judge in a thoughtful and well-written order and this writer conclude that it was not.

*Guyton* suggests that such confusion may not be limited to this court. There, the issue before our Supreme Court was whether the defendant's convictions for murder and carrying a handgun with a license violated double jeopardy protections. Although the court unanimously found there was no double jeopardy violation, it reached this conclusion by three different routes. *See Guyton v. State,* 771 N.E.2d 1141, 1149 (Ind.2002); *Id.* (Dickson, J. concurring in result); and *Id.* (Boehm, J., concurring).

Uncertainty, confusion and inconsistency are not the hallmarks of good jurisprudence. If such dubious characteristics are to be avoided, our appellate courts need to continue to define and clarify the *Richardson* actual evidence test.

It seems to me that much of the confusion arises from the *Richardson* direction to determine whether there is a *reasonable possibility* that the jury used the same evidentiary facts that establish the essential elements of one conviction to establish the essential elements of a second offense. How does one determine whether a possibility is reasonable? Is it a preponderance of the evidence test in another guise in which we look to whether it is more likely true than not true? Is it a corollary to reasonable doubt? And, whatever it is, how do we on appeal make such a determination by looking only at the record? Isn't reasonableness a factual determination, not a legal one? Moreover, since, as this case shows, reasonable people can disagree about what is a reasonable possibility, does that not lead to the conclusion that we will get different results depending upon who is making the determination? Can we really base double jeopardy determinations on such a subjective standard?