## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 09 2019, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Robert Earl Davis | Curtis T. Hill, Jr. |
| Michigan City, Indiana | Attorney General of Indiana |
| | Angela N. Sanchez |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Earl Davis, | April 9, 2019 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 18A-PC-556 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, | The Honorable Kathleen A. Sullivan, Judge Pro Tempore |
| *Appellee-Respondent.* | Trial Court Cause No. 45G02-1311-PC-8 |

**Darden, Senior Judge.**

# Statement of the Case

Robert Earl Davis appeals the denial of his petition for post-conviction relief. We affirm.

# Issues

Davis raises seven issues, which we consolidate and restate as:

I. Whether the State's belated answer to Davis' first petition for post-conviction relief was an improper ex parte communication.

II. Whether the post-conviction court erred in sustaining the State's objection to Davis' questioning of a witness.

III. Whether the post-conviction court erred in rejecting Davis' claim of ineffective assistance of trial counsel.

IV. Whether the post-conviction court erred in rejecting Davis' claim of ineffective assistance of appellate counsel.

# Facts and Procedural History

The facts of Davis' case, as stated by a panel of this Court in Davis' prior appeal, are as follows:

> Alisha Williams lived with Parrish Myles, whom she had been dating for sixteen years, and their two children, A.L. and D.M., in The Mansards Apartments in Griffith, Indiana. On the morning of July 22, 2011, Alisha was running late for work so she asked Parrish to take A.L., age eleven, and D.M., age five or six, to day care. Around 9:30 a.m., Parrish put the children in

his Chevrolet Tahoe. A.L. got in the front seat, and D.M. got in the back seat. Parrish went to put trash in the dumpster when a bronze-colored Toyota Camry with Illinois license plates and registered to Davis pulled up.

The occupants of the Camry called out to Parrish, and Parrish walked up to the passenger side of the car and briefly talked to the two men in the car. As Parrish walked away from the Camry, a shot was fired from inside the car, hitting him. A man in a red-colored shirt, white tennis shoes, and hat exited the driver's side of the Camry and shot Parrish again. A man in a white shirt stayed in the car and slid over to the driver's seat. The man in the red-colored shirt and white tennis shoes got in the passenger seat, and the man in the white shirt drove away. A.L. witnessed the entire incident. Other residents in the apartment complex heard the shots and called 911. One of the residents, Rosa Orphey, had just finishing drinking tea on her patio when she saw the man in the red-colored shirt shoot Parrish while he was on the ground. Another resident, Krystle Gavin, was putting antifreeze in her car when she heard the shots. Krystle said that a man in a red-colored shirt had a gun and that his skin was darker than the man's skin in the car.

Griffith Police Department Officer Robert Carney responded to reports that a gold sedan was leaving the scene of a shooting. Officer Carney quickly located the car, which was stopped at a red light at the intersection of Ridge Road and Broad Street. Officer Carney noticed the car because a man was standing outside the passenger side, walked around the car, and entered the driver's seat, thereby switching drivers. Although the man was wearing a light-colored shirt instead of a red-colored shirt, the man was wearing white tennis shoes, the same color as the shooter's shoes. Officer Carney activated his emergency lights. The man, however, refused to stop, and a high-speed chase ensued with the Camry reaching speeds of over 100 miles per hour, running red lights, and weaving through traffic in

residential areas and on I-80/94. At one point, the driver stopped and dropped off the man in the white shirt, who was wearing black tennis shoes. He disappeared along the Little Calumet River carrying a red-colored shirt and a red hat as the driver sped off. Officer Carney continued his pursuit of the driver until Officer Carney crashed his car into a tree in a residential area. Another officer continued chasing the driver, and the chase ended when the driver, identified as forty-five-year-old Davis from Chicago, crashed his Camry head-on into another police officer's car. The police collected Davis's clothing, which included a light-colored shirt and white tennis shoes. The passenger of the car who had been dropped off at the Little Calumet River, Davis's twenty-nine-year-old nephew, Lyndon Davis ("Lyndon"), also from Chicago, was eventually apprehended.

Police responded to the scene of the shooting within minutes to find Parrish lying face down in the roadway. Parrish was breathing and moving slightly but quickly lost his pulse. An ambulance transported Parrish to the hospital. Parrish was shot four times and died from multiple gunshot wounds. A copper bullet jacket was collected at the scene and bullet fragments were collected from Parrish's body. It was determined that the bullet fragments and casings were fired from the same weapon, which was never recovered. Police recovered a red-colored shirt and a red hat on the river bank near the area where Davis had dropped off Lyndon during the chase.

The State charged Davis with murder and felony murder, but the State dismissed the felony-murder charge before trial. A five-day jury trial began in January 2012. The State's theory at trial was that Davis was the shooter; the State uncovered no motive for the murder. Davis's theory was that "he had nothing to do with the killing of Parrish Myles," he did not have an agreement with Lyndon, and the "only thing" he was guilty of was "fleeing from

the police." Tr. p. 762-63. The trial court instructed the jury on accomplice liability. The jury found Davis guilty of murder.

*Davis v. State*, No. 45A03-1203-CR-145, slip op. at 1-2 (Ind. Ct. App. 2013), *trans. denied*.

[4] The trial court sentenced Davis to serve sixty-five years. He appealed, claiming: (1) the trial court erred in instructing the jury; (2) the prosecutor committed misconduct; (3) the evidence was insufficient to sustain his conviction; and (4) his sentence was inappropriate in light of the nature of the offense and his character. A panel of this Court rejected Davis' claims and affirmed his conviction and sentence. *See id.* at 9.

[5] On November 8, 2013, Davis filed a pro se petition for post-conviction relief with a supporting memorandum. The post-conviction court ordered the State to file an answer on or before January 7, 2014. The State belatedly filed an answer on January 15, 2014. According to Davis, he did not receive a copy of the answer and was unaware one had been filed. Next, Davis requested representation by the Office of the State Public Defender (SPD). The post-conviction court forwarded Davis' petition to the SPD, who ultimately declined to represent Davis.

[6] On February 16, 2016, Davis moved to withdraw without prejudice his petition for post-conviction relief. The post-conviction court granted his motion and deemed the petition withdrawn without prejudice.

On April 28, 2016, Davis refiled his petition for post-conviction relief with a supporting memorandum. He later sought and received permission to amend the petition, raising claims of ineffective assistance of trial and appellate counsel. On January 26, 2017, an attorney filed an appearance on behalf of Davis. Counsel filed an "Addendum" to Davis' pro se petition for post-conviction relief. Appellant's App. Vol. 2, p. 5. On June 6, 2017, the post-conviction court determined the Addendum should not have been filed, ruling that a petition for post-conviction relief may only be amended. The post-conviction court set a deadline of June 28, 2017, for Davis to amend his petition, but he did not file any amendments.

The post-conviction court held an evidentiary hearing on July 28, 2017. Next, the parties filed proposed findings of fact and conclusions of law. On February 6, 2018, the post-conviction court issued findings of fact and conclusions of law, denying Davis' petition for post-conviction relief. Davis' counsel subsequently moved to withdraw from the case, and the post-conviction court granted the motion. Davis filed a pro se motion to correct error, which the post-conviction court denied. This appeal followed.

## Discussion and Decision

### I. Standard of Review

Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available for consideration. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. Instead, subsequent collateral challenges

to convictions must be based on grounds enumerated in the post-conviction rules. *Id.* If an issue was known and available, but not raised on direct appeal, it is waived. *Id.* If it was raised on appeal, but decided adversely, it is barred by the doctrine of res judicata. *Id.*

[10] A petitioner for post-conviction relief has the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). When appealing the denial of a petition for post-conviction relief, the petitioner is appealing a negative judgment. *Rogers v. State*, 827 N.E.2d 78, 80 (Ind. Ct. App. 2005), *trans. denied.* Accordingly, the petitioner must convince us that the evidence, as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Martin v. State*, 740 N.E.2d 137, 139 (Ind. Ct. App. 2000), *trans. denied.* We examine only the probative evidence and reasonable inferences that support the post-conviction court's determination, and we do not reweigh the evidence or judge witness credibility. *Id.*

[11] In this case, the judge who presided over the post-conviction hearing was also the judge who conducted Davis' original trial. We afford the post-conviction court's findings and judgment "greater than usual deference" in this circumstance. *McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied.* "[I]n such a case, the judge is uniquely situated to assess whether trial counsel's performance fell below an objective standard of reasonableness

and whether, but for counsel's unprofessional conduct, there was a reasonable probability that a different verdict would have been reached." *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013), *trans. denied*.

[12] Further, we note that although Davis is proceeding pro se and lacks legal training, we hold pro se litigants to the same standards as trained counsel. *Pannell v. State*, 36 N.E.3d 477, 485 (Ind. Ct. App. 2015), *trans. denied*.

## II. Due Process, Ex Parte Communications, and Untimeliness

[13] Davis claims the post-conviction court erroneously overlooked the State's failure to provide him with a copy of its belated answer to his original petition for post-conviction relief. He claims he did not learn of the State's answer until the evidentiary hearing on his refiled petition for post-conviction relief. Davis concludes the State's failure to serve the answer upon him renders the State's answer an improper ex parte communication that deprived him of his right to due process of law under the federal and state constitutions.

[14] The State correctly notes that Davis did not raise his due process constitutional claims during proceedings in the post-conviction court. He did not present the due process claims during the evidentiary hearing or in his proposed findings and conclusions. He may not present those claims on appeal for the first time. *See Walker v. State*, 843 N.E.2d 50, 57 (Ind. Ct. App. 2006) (claims raised for the first time on appeal are waived), *trans. denied*.

[15] Davis did argue to the post-conviction court that he was entitled to prevail because the State's failure to timely file its answer to his original petition, along

with its failure to send him a copy of its answer, amounted to a default against his claims. He has failed to include a copy of the State's answer in his Appellant's Appendix. In any event, Davis fails to recognize that he withdrew his original petition for post-conviction relief without prejudice on February 16, 2016, and subsequently filed a new petition. The proceedings on his original petition were thus ended at his request. Davis does not explain how any procedural shortcomings in the former post-conviction proceeding carried over to the proceedings on his refiled petition for post-conviction relief.

[16] Further, in his Appellant's Brief, Davis does not cite any authority for the proposition that the State's failure to timely respond to his petition for post-conviction relief and/or serve a copy of the answer on him results in him prevailing by default on the claims set forth in his petition for post-conviction relief. Each contention in an appellate brief "must be supported by citations to the authorities . . . ." Ind. Appellate Rule 46(A)(8)(a).

[17] In any event, post-conviction courts are vested with discretion in permitting documents to be filed despite untimeliness or defects in service. *See, e.g.*, *Rondeau v. State*, 48 N.E.3d 907, 914 (Ind. Ct. App. 2016) (post-conviction court did not err in allowing State to file signed discovery responses after the due date had expired; petitioner failed to demonstrate prejudice from the decision), *trans. denied*. We will not address this claim further.

# III. Scope of Post-Conviction Witness Questioning

[18] Davis claims the post-conviction court abused its discretion during the post-conviction evidentiary hearing by sustaining the State's objection to his questioning of his former appellate counsel. Specifically, he claims the post-conviction court should have allowed him to continue questioning counsel about counsel's understanding of the ballistics evidence in Davis' case. The admission or exclusion of evidence is within the sound discretion of the post-conviction court. *Badelle v. State*, 754 N.E.2d 510, 521 (Ind. Ct. App. 2001), *trans. denied*. We will not disturb a post-conviction court's evidentiary ruling unless the post-conviction court has abused its discretion. *Id.* An abuse of discretion occurs when the trial court's decision "is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013).

[19] The following discussion occurred at the post-conviction evidentiary hearing during Davis' questioning of his former appellate counsel, Mark Bates:

> Q. Mr. Bates, do you remember Henry Hatch, the crime lab examiner?
>
> A. I don't remember his specific testimony. I do recall the name as being a firearm's [sic] examiner, I think.
>
> Q. Do you recall him saying that copper jacket fragments were found at the crime scene, but you stated casings were found? Do you remember that?

A.      No.

Q.      If you search for casings that are associated with a
        weapon, does that normally come back associated with the
        shell the bullet comes out of?

A.      I'm no expert in that.  I think there can be a link, but I
        can't say that with any certainty.

Q.      If you were told that only casings were found at the scene
        of the crime, what would your thoughts be?

[State]:            Judge, I'm going to object as to relevance.

[PCR Court]:        How is it relevant?

[Davis]:            Mr. Appellate Counsel put that in his brief as
                    a statement of fact, Judge.

[PCR Court]:        Is it raised as an issue in the PCR?

[Davis]:            I'm sorry, Your Honor?

[PCR Court]:        Is it raised had [sic] as an issue in the PCR?

[Davis]:            I believe it has been, yes, Judge.

[PCR Court]:        Can you direct the State to where it's at?

[State]:            Your Honor, I don't remember that being in
                    the PCR.  In fact, most of the argument is
                    directed toward trial counsel.

[Davis]:            My client raised the ineffective issue of appellate counsel, but you mean the specific issue?

[PCR Court]:        They have to put 8A, and 9A or B, whatever, has to have specific facts of ineffective assistance, sure.

[Davis]:            You mean regarding the casings versus the—

[PCR Court]:        Yes. More importantly, was there an issue? Was this relevant to one of the issues whether it was fragments or casings in the appeal. Do you recall?

[Witness Bates]:    What I do recall, Your Honor, is that the gun was never recovered, but I don't believe there was any issue about if those fragments could be traced to a specific gun. I believe the murder weapon was never recovered.

[PCR Court]:        So there wasn't an appellate issue that this could be relevant to?

[Witness Bates]:    No. I didn't deem it to be relevant.

[PCR Court]:        All right, the relevancy objection is sustained. Next question?

[Davis]:            We have no further questions.

PCR Tr. pp. 65-67.

[20] Davis argues the post-conviction court's ruling was erroneous because his line of questioning was directly relevant to an issue he raised in his amended petition for post-conviction relief: whether appellate counsel presented an "erroneous assertion of the facts." Appellant's App. Vol. 2, p. 159. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evid. Rule 401. In general, relevant evidence is admissible, and irrelevant evidence is not admissible. Ind. Evid. Rule 402.

[21] It appears that Bates' testimony about his understanding of the ballistics evidence in Davis' case tends to make it more or less probable that he inaccurately described that evidence in Davis' direct appeal briefs. Regardless, Davis must demonstrate that any error in the post-conviction court's evidentiary ruling hindered his substantial rights. Davis did not explain to the post-conviction court, and has not explained in this appeal, what Bates' response to his question would have been if the post-conviction court had not sustained the State's objection. He also does not explain how Bates' answer would have supported his claim. Further, it does not appear that Davis has been hindered from sufficiently presenting his claim of ineffective assistance of appellate counsel, which we address below. We conclude Davis has failed to demonstrate reversible error on this point.

## IV. Assistance of Trial Counsel

[22] Davis argues the post-conviction court erred in rejecting his claims of ineffective assistance of trial counsel. The standard by which we review such claims is

well established. In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet a two-part test, showing: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), *trans. denied*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Shanabarger v. State*, 846 N.E.2d 702, 708 (Ind. Ct. App. 2006), *trans. denied*. The two parts of this test are independent inquiries, and a claim that fails to establish both parts must fail. *Id.*

[23] A strong presumption exists that counsel rendered adequate assistance and used reasonable professional judgment. *Thomas v. State*, 965 N.E.2d 70, 76 (Ind. Ct. App. 2012), *trans. denied*. In determining strategy and tactics, counsel is afforded considerable discretion, and isolated mistakes, poor strategy, inexperience, or instances of bad judgment do not necessarily render representation ineffective. *Id.* Further, in order to prove ineffective assistance of counsel due to a failure to object, a party must prove that an objection would have been sustained if made and, further, that the party was prejudiced by the failure. *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001).

### A. Motion to Suppress

[24] Davis first claims that his trial counsel, Lemuel Stigler, should have filed a motion to suppress evidence, specifically the clothes that Davis was wearing when he was arrested and incarcerated. Davis claims: (1) at the time of his

incarceration in the Lake County Jail, the jail permitted inmates to release personal possessions, including the clothes that the inmate was wearing at the time of arrest, to persons designated by inmates; (2) Davis filled out a form notifying jail officials to release his clothes and other personal property to his sister; (3) the jail failed to release his clothes to his sister on August 5, 2011, in violation of jail policy; and (4) the jail improperly retained his clothes until January 6, 2012, three weeks before trial, when the police obtained a search warrant for the clothes. Davis thus argues that the jail "illegally seized" his clothes, Appellant's Br. p. 21, that the seizure prejudiced his defense, and that his trial counsel should have sought a ruling that the clothes were inadmissible at trial.

[25] Davis, as the petitioner for post-conviction relief, bore the burden of proving his claim. Viewing the facts in the light most favorable to the judgment, Davis failed to carry his burden as to whether the jail had a policy of releasing inmates' clothes to the inmates' designees. Jimmy Purvis, who worked at the Lake County Jail when Davis was incarcerated there, testified at the post-conviction hearing. Purvis explained that when an inmate fills out a personal property release form, "all property is released except for the inmate's immediate clothing, which is what he would wear if he was suddenly released." PCR Tr. p. 56. He further stated, "We never release clothing at all. Due to the fact of the nature of them being there, they could be released at any time, we always kept pants, shoes, socks, shirts, things of that nature. The property that

would have been returned to the family would have been keys, wallet, IDs, things like that . . . ." *Id.* at 57.

[26] Davis asked the post-conviction court to take judicial notice of two copies of the Lake County Jail's inmate handbook, which purportedly supported his claim that the jail was required to release clothing to an inmate's designated recipients upon request. The post-conviction court noted that the handbooks were revised in 2015 and 2017, well after Davis was incarcerated in the jail, and declined to take judicial notice of them. Davis cites to no authority demonstrating that the trial court erred in refusing to take judicial notice. In any event, both the 2015 and 2017 handbooks plainly state the jail may retain personal items if they "are needed for further investigation and/or to be retained as evidence." Appellant's App. Vol. 2, pp. 199, 201.

[27] In summary, Davis failed to establish that the jail acted unlawfully in retaining the clothes he was wearing at the time of his arrest, or that the failure to release the clothes to his sister rendered the clothes inadmissible as evidence. Davis points to testimony by Attorney Stigler that the local public defender's office could have also provided clothing to released jail inmates, but we cannot reweigh the evidence. We agree with the post-conviction court that based on the evidence presented here, if trial counsel had filed a motion to suppress, it would have been denied. Counsel does not perform deficiently by failing to file a motion that would have been denied. *See Garrett v. State*, 992 N.E.2d 710, 723-24 (Ind. 2013) (trial counsel not ineffective for failing to file motion to dismiss; evidence demonstrated counsel would not have prevailed).

## B. Witness Cross-Examination

[28]  Davis next argues Attorney Stigler failed to adequately cross-examine a child witness, A.L., about discrepancies between her trial testimony and her deposition. Eleven-year-old A.L. had witnessed the murder of Myles, her father. Davis characterizes his trial counsel as having a "conflict of interest," Appellant's Br. p. 27, stating that counsel allowed his compassion for A.L. to overwhelm his duty to "zealously represent" Davis. *Id.* at 22. The post-conviction court rejected Davis' characterization of a conflict of interest, determining that counsel's decisions during cross-examination of A.L. were instead based on a "strategic" decision not to alienate the jury against him and Davis. Appellant's App. Vol. 2, p. 221.

[29]  The record supports the post-conviction court's determination. During the original trial, Attorney Stigler used A.L.'s deposition to cross-examine her on one topic, pointing out inconsistencies in her statements on the distance between Myles' vehicle and the shooter's vehicle at the time of the murder.

[30]  Later, while answering questions from the jury, A.L. stated she had been shown pictures during her deposition. At that point, the parties approached the bench for a conference outside the jury's hearing. Attorney Stigler told the trial court that the parties agreed that A.L. was not shown any photos during the deposition, and she misspoke. He further stated that the parties agreed to stipulate that she was not shown any photos during the deposition in lieu of further examination. Attorney Stigler explained, "I don't want her to appear to be lying and I don't want it to appear that I'm trying to take advantage of her."

Trial Tr. Vol. 3, pp. 460-61.  After A.L. left the witness stand, the trial court told the jury the parties had stipulated that no pictures were shown to A.L. during her deposition.

[31]   During the post-conviction hearing, Attorney Stigler testified as follows when he was asked about impeaching A.L.:

> These are—with children it's sort of delicate.  You don't want the jury to get—to hate you.  To have it in for your client because you, as the attorney, are going very, very hard at these children. If there were inconsistencies that I was not able to bring out, then I probably referred to the deposition, but I'm certain that I was careful not to antagonize the jury by really, really going after the child.

PCR Tr. p. 4.  He further explained:

> My experience, I've done a number of cases where children have been witnesses.  And it's my impression that juries do not like, regardless of whether—of the status of that particular child witness.  They do not like you, as an attorney, being very, very harsh with the children.  So I did what I needed to do in order to get out what I thought that I needed.  I did not want the jury to, let's say, hate me, and therefore deal very, very harshly with Mr. Davis.

*Id.* at 41-42.

[32]   Attorney Stigler's decisions regarding his cross-examination of A.L. were a matter of strategy.  Obtaining the joint stipulation regarding A.L.'s incorrect statement, instead of continuing to cross-examine her directly, achieved counsel's goal—calling into question the validity of A.L.'s testimony—without

potentially alienating the jury against him and Davis. *See Tyra v. State*, 574 N.E.2d 918, 924 (Ind. Ct. App. 1991) (trial counsel made strategic decision not to object to testimony from arson victims about effect of arson on their lives; counsel believed the trial judge would have overruled the objection and thus potentially alienated the jury for no benefit), *trans. denied*. We reject Davis' claim that counsel had a conflict of interest. To the contrary, the uncontradicted evidence demonstrates Davis' trial counsel attempted to make the best case possible for his client under the circumstances. The post-conviction court did not err in rejecting this claim of ineffective assistance.

### C. Jury Instruction on Accomplice Liability

[33] Davis claims his trial counsel rendered ineffective assistance by failing to object to a jury instruction on accomplice liability. Davis attempted to challenge the jury instruction on direct appeal, but this Court determined the issue was procedurally defaulted due to trial counsel's failure to object at trial. *Davis*, No. 45A03-1203-CR-145, slip op. at 2. The Court instead considered whether the jury instruction amounted to fundamental error, and it concluded the instruction did not meet the high bar for such error. *Id.* at 4. As a result, during post-conviction proceedings Davis challenged trial counsel's failure to object.

[34] The post-conviction court determined Davis' ineffective assistance claim based on his challenge to the jury instruction was barred by res judicata because this Court had addressed the instructional issue in Davis' direct appeal. We disagree. Res judicata applies when: (1) a former judgment was issued by a court of competent jurisdiction; (2) the former judgment was rendered on the

merits; (3) the matter now in issue was or could have been determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the same parties to the present suit or their privies. *Dexter v. State*, 991 N.E.2d 171, 175 (Ind. Ct. App. 2013), *trans. denied*.

[35] In the current case, Davis' jury instruction challenge, raised during post-conviction proceedings in the context of ineffective assistance of counsel, is different than a jury instruction challenge raised on direct appeal in the context of fundamental error, and could not have been determined in his prior appeal. *See Benefield v. State*, 945 N.E.2d 791, 805 (Ind. Ct. App. 2011) ("[W]e conclude that when a claim of ineffective assistance of trial counsel is based on a failure to object, and that error was advanced as fundamental error on direct appeal, a finding that the error did not rise to fundamental error does not automatically rule out the possibility that the error resulted in prejudice sufficient to establish ineffective assistance."). We now turn to the merits of Davis' ineffective assistance claim.

[36] The standard of review for jury instructions is well-established:

> Jury instructions should inform the jury regarding the law applicable to the facts without being misleading and should enable the jury to understand the case and arrive at a just, fair, and correct verdict. The manner of instructing the jury lies within the sound discretion of the trial court and we will not reverse the trial court's ruling unless the charge to the jury misstates the law or is otherwise misleading. Jury instructions must be considered as a whole and in reference to each other, and even an erroneous instruction will not be reversible error if the instructions taken as a whole do not misstate the law or

otherwise mislead the jury. Before a defendant is entitled to a reversal, he must affirmatively show that the instructional error prejudiced his substantial rights.

*Filice v. State*, 886 N.E.2d 24, 37 (Ind. Ct. App. 2008) (citations omitted), *trans. denied*.

[37]    In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Boney v. State*, 880 N.E.2d 279, 293 (Ind. Ct. App. 2008), *trans. denied*. Because Davis presents this claim in the context of an allegation of ineffective assistance of counsel, he must show a reasonable probability that if trial counsel had objected to the instruction, the objection would have been sustained. *Garrett*, 992 N.E.2d at 723.

[38]    In this case, the trial court's jury instruction on accomplice liability stated as follows:

> Where two or more persons engage in the commission of an unlawful act; each person may be criminally responsible for the actions of each other person which were a probable and natural consequence of their common plan even though not intended as part of the original plan. It is not essential that participation of any one person to each element of the crime be established.

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

1. has not been prosecuted for the offense;

2. has not been convicted of the offense; or

3. has been acquitted of the offense.

To aid under the law is to knowingly aid, support, help or assist in the commission of a crime. Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to allow an inference of participation. It is being present at the time and place and knowingly doing some act to render aid to the actual perpetrator of the crime.

The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime.

Trial Tr. Vol. 5, pp. 779-80.

[39]     Davis claims the instruction misstated the law because it told the jury to consider his course of conduct before and after the murder but failed to state that they should consider his conduct during the murder as well. We disagree because other language in the instruction directed the jury to consider Davis' acts during the crime. The instruction informed the jury that "mere presence at

the scene" was not enough; the State must prove a defendant was "present at the time and place and knowingly doing some act to render aid." *Id.* In addition, the jury was told it could consider a defendant's presence at the shooting as a circumstance in its determination. The trial court did not abuse its discretion in giving the instruction. *See Boney*, 880 N.E.2d at 294-95 (determining jury instruction correctly stated the law on accomplice liability; instruction did not explicitly state that jury had to determine Boney had the mens rea to commit murder, but the instruction, read as a whole, sufficiently informed the jury of the required mental state).

[40] The instruction correctly stated the law. If Attorney Stigler had objected to the instruction, the objection would have been properly overruled. Davis has failed to demonstrate that he was prejudiced by counsel's failure to object, and the post-conviction court did not err in rejecting this claim of ineffective assistance of trial counsel.

### D. Collective Impact

[41] Davis argues that Attorney Stigler's errors, considered as a whole, amounted to ineffective assistance. The cumulative effect of a number of errors can render counsel's performance ineffective. *Grinstead v. State*, 845 N.E.2d 1027, 1036 (Ind. 2006). In this case, we have determined that the post-conviction court did not err in rejecting Davis's three individual claims of ineffective assistance of trial counsel. It follows that a claim of cumulative ineffective assistance must also fail. We affirm the post-conviction court's rejection of Davis' claims of ineffective assistance of trial counsel.

# V. Assistance of Appellate Counsel

[42] Davis claims his appellate counsel, Mark Bates, misstated the facts on appeal, causing a panel of this Court to erroneously affirm his conviction. The Sixth Amendment entitles a criminal defendant to the effective assistance of counsel not only at trial, but also during a first appeal as of right. *Donnegan v. State*, 889 N.E.2d 886, 892 (Ind. Ct. App. 2008), *trans. denied*. The standard of review for a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel. *Walker v. State*, 988 N.E.2d 1181, 1190 (Ind. Ct. App. 2013), *trans. denied*. That is, the petitioner must establish unreasonably deficient performance by appellate counsel, resulting in prejudice. *Id.* "When raised on collateral review, ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well." *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008).

[43] Davis' claim falls under the third category: an allegation of failure to present issues well. In Davis' direct appeal, Attorney Bates stated once in the twenty-eight-page appellant's brief that "casings" were submitted to ballistics testing. Appellant's App. Vol. 2, p. 76. In the appellee's brief, the State also referred to a "copper bullet jacket" and "casings" being found at the scene. *Id.* at 107. A panel of this Court referred to a "copper jacket bullet" and "casings" found at the scene. *Davis.* No. 45A03-1203-CR-145, slip op. at 2.

[44] Davis argues Attorney Bates misstated the facts because no casings were found in this case. Instead, he notes the State's ballistics examiner, Henry Hatch, testified at trial that he received "two spent bullet jacket fragments." Trial Tr. Vol. 4, p. 536. Davis claims his attorney's alleged misstatement amounted to deficient performance.

[45] We reject Davis' claim on multiple grounds. First, Davis bore the burden of explaining, with citations to supporting evidence, the difference between a casing and a bullet jacket, and, further, why any misstatement of the facts damaged his case. Davis' appellant's brief does not include such an explanation.

[46] Second, Davis has failed to demonstrate that any misstatement by counsel amounted to unreasonably deficient performance. Davis has never disputed that someone shot Myles to death on the day in question, and that ballistics evidence was found at the scene. Davis has instead merely claimed that he was not involved in the murder. Further, the murder weapon was never found. As a result, the ballistics evidence was peripheral to the State's criminal charge of murder against Davis, and it is unclear that counsel's isolated, one-time potentially erroneous description of ballistics evidence under these circumstances amounted to deficient performance.

[47] Third, appellate counsel's alleged misstatement did not unduly prejudice Davis' case. Counsel presented four issues: error in jury instructions, prosecutorial misconduct, sufficiency of the evidence, and appropriateness of Davis'

sentence. Of these claims, the ballistics evidence could have been pertinent to the sufficiency claim. However, Davis did not discuss the ballistics evidence in conjunction with the sufficiency claim, and the Court of Appeals panel did not discuss that evidence either. As a result, any misstatements by Davis' appellate counsel did not affect the outcome of his appeal. Put another way, Davis failed to show a reasonable probability that the Court of Appeals' decision in his direct appeal would have been different absent any misstatement.

[48] On a related note, Davis claims the post-conviction court erred in the course of ruling on Davis' claim of ineffective assistance of appellate counsel. The post-conviction court determined that on direct appeal, a panel of this Court mentioned casings only once in the memorandum decision, and "[t]hat finding was not the basis for the appellate court's resolution of any of the issues – including the issue of the sufficiency of the evidence. Any error in failing to correct this terminology was harmless, at best." Appellant's App. Vol. 2, p. 223. Davis bore the burden of proving any deficient performance by appellate counsel resulted in undue prejudice, and on this issue, he failed to carry his burden. The post-conviction court did not err. *See Santonelli v. State*, 743 N.E.2d 1281, 1285 (Ind. Ct. App. 2001) (petitioner suffered no prejudice, and thus did not receive ineffective assistance of counsel, as a result of appellate counsel's failure to include portions of the trial record in the appellate record because the error was harmless), *trans. denied*.

# Conclusion

[49] For the reasons stated above, we affirm the judgment of the post-conviction court.

[50] Affirmed.

Baker, J., and Robb, J., concur.