# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON ROUDEBUSH, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 80A04-1301-PC-46 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM TIPTON CIRCUIT COURT
The Honorable Thomas R. Lett, Judge
Cause No. 80C01-0911-PC-537

**August 28, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Jason Roudebush appeals the denial of his petition for post-conviction relief. He asserts his trial counsel was ineffective for not communicating plea negotiations to him and for advising him to give a statement to police without securing an agreement from the prosecutor for Roudebush to receive leniency in return. We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 26, 2003, Roudebush, Ethan Pennington, and Shane Bramley robbed Morris Moody of money and drugs. In the course of the robbery, someone shot Moody in the head at close range and killed him. When arrested, Roudebush hired Karl Hadley (hereinafter, "Counsel") to represent him. Shortly thereafter, police asked Roudebush to give a statement about the crime. Counsel discussed Roudebush's situation with the prosecutor, and the prosecutor indicated only that Roudebush should cooperate if he hoped for leniency later. Counsel told Roudebush he had the right to remain silent, but explained to Roudebush why he believed, based on his discussions with the prosecutor, that a statement could help Roudebush achieve the best possible plea deal. Roudebush decided to make a statement in which he admitted his involvement but claimed Bramley shot Moody.

The State charged Roudebush with felony murder[1] and conspiracy to commit Class A felony robbery.[2] Counsel and the prosecutor entered plea negotiations, but no agreement was reached. After a jury found Roudebush guilty as charged, the trial court entered convictions and pronounced a fifty-five year sentence. We affirmed the felony murder conviction, but

---

[1] Ind. Code § 35-42-1-1(2) ("A person who . . . kills another human being while committing or attempting to commit . . . robbery . . . commits murder, a felony.").
[2] Ind. Code §§ 35-42-5-1 (robbery), 35-41-5-2 (conspiracy).

reversed the conspiracy to commit robbery conviction on double jeopardy grounds. *Roudebush v. State*, No. 80A02-0701-CR-29 (Ind. Ct. App. Nov. 26, 2007), *trans. denied*.

Roudebush sought post-conviction relief asserting his trial counsel was ineffective. After hearing evidence, the court denied his petition.

## DISCUSSION AND DECISION

Post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002), *reh'g denied*, *cert. denied sub nom. Davidson v. Indiana*, 537 U.S. 1122 (2003). As post-conviction proceedings are civil in nature, the petitioner must prove his grounds for relief by a preponderance of the evidence. *Id*. A party appealing a negative post-conviction judgment must establish the evidence is without conflict and, as a whole, unerringly points to a conclusion contrary to that reached by the post-conviction court. *Id*. Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to the court's legal conclusions, but "the findings and judgment will be reversed only upon a showing of clear error–that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quoting *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997), *cert. denied*, 523 U.S. 1079, 118 S. Ct. 1528, 140 L.Ed.2d 678 (1998)), *reh'g denied*, *cert. denied sub nom. Ben-Yisrayl v. Indiana*, 534 U.S. 830 (2001). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

In reviewing a claim of ineffective assistance of counsel, we begin with a strong presumption "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012), *reh'g denied*. Trial counsel has wide latitude in selecting trial strategy and tactics, which choices will be subjected to deferential review. *Id.* A petitioner must offer "strong and convincing evidence to overcome this presumption" of adequate assistance and reasonable professional judgment. *Ben-Yisrayl*, 729 N.E.2d at 106.

To demonstrate ineffective assistance, a petitioner must establish both deficient performance and resulting prejudice. *Pontius v. State*, 930 N.E.2d 1212, 1219 (Ind. Ct. App. 2010), *trans. denied*. Performance is deficient when trial counsel's representation falls below an objective standard of reasonableness causing errors sufficiently serious to amount to a denial of a defendant's Sixth Amendment right to counsel. *Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind. 2003), *reh'g denied*. A fair evaluation of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight by evaluating the challenged conduct from counsel's perspective at the time. *Nadir v. State*, 505 N.E.2d 440, 441 (Ind. 1987). Prejudice is established when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Id.* If a petitioner did not establish prejudice, we need not evaluate trial counsel's performance. *Pontius*, 930 N.E.2d at 1219.

1.     Advising Roudebush to Give a Statement

Roudebush first argues Counsel was ineffective for advising him to give a statement

4

to police without a guarantee of leniency in return. The State contends Roudebush cannot argue Counsel was ineffective because Roudebush had no right to counsel at the time he was advised to give the statement. We disagree with the State's contention.

"The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings. '[B]efore proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel.'" *Oberst v. State*, 935 N.E.2d 1250, 1255 (Ind. Ct. App. 2010) (quoting *Davis v. United States*, 512 U.S. 452, 456 (1994)), (citations omitted), *trans. denied*. Without a right to counsel, a defendant cannot complain that the assistance counsel provided was constitutionally ineffective. *Id*. at 1256.

The State relies on *Oberst*, in which a lawyer permitted Oberst to give a statement to police thirty days before charges were filed against him, and we held Oberst could not challenge the adequacy of counsel's assistance. *Id*. However, we hold *Oberst* does not control.

Although Roudebush gave his statement to police before charges were filed against him, the trial court had conducted Roudebush's initial hearing. A person arrested for a crime must be given an initial hearing before a judicial officer. *See*, *e.g*., Ind. Code § 35-33-7-1 (requiring hearing for those arrested without a warrant to occur "promptly"). At or before the initial hearing, the State must submit a probable cause affidavit so the judge may determine whether "there is probable cause to believe that any crime was committed and that the arrested person committed it." Ind. Code § 35-33-7-2. If a person is arrested before charges are filed, then "an information or indictment shall be filed or be prepared to be filed at or

5

before the initial hearing . . . ." Ind. Code 35-33-7-3(a). However, if a prosecutor needs more time "to evaluate the case and determine whether a charge should be filed . . . then the court shall recess or continue the initial hearing for up to seventy-two (72) hours." Ind. Code § 35-33-7-3(b). "Before recessing the initial hearing and after the *ex parte* probable cause determination has been made, the court shall inform a defendant . . . of the rights specified in subdivisions (1), (2), (3), (4), and (5) of section 5 of this chapter," Ind. Code § 35-33-7-3(c), which includes the right to retain counsel and the right to have counsel assigned at no expense if a defendant is indigent. Ind. Code § 35-33-7-5.

Because the court decided the State had probable cause to continue holding Roudebush for commission of undisclosed crimes, the State had only 72 hours to determine what crimes to charge, and the court had informed Roudebush of his right to counsel, we hold his constitutional right to counsel, and the effective assistance thereof, had attached. *See*, *e.g.*, *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.") (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

Although his right to counsel had attached, the post-conviction court found Roudebush's claim failed because Counsel made

> tactical decisions that just did not work out as well as he had hoped. In this case, Michael Bramley and Ethan Pennington had both given statements to the police, and both implicated [Roudebush] in the felony murder of Morris Moody. By allowing [Roudebush] to talk to the police, [counsel] wanted to divert attention away from [Roudebush] and onto another guy- that is not a bad strategy. It is a common one. Counsel was hopeful he could limit

6

[Roudebush's] culpability by showing he was not the "trigger man," and that he did not personally kill the victim. It was certainly reasonable for [Counsel] to allow [Roudebush] to talk to the police in hopes of revealing his lesser involvement in the crime, and at the same time shift the focus to co-defendants' deeper involvement. [Counsel] was clearly thinking that his client is a "lower rung" participant who just happened to be with the shooter, Bramley, and so he advised him to work with the police and hope that his cooperation would result in a favorable plea offer. It was reasonable to attempt to de-emphasize [Roudebush's] involvement, and one way to do that was by allowing [Roudebush] to talk to the police and emphasize that he was not the "trigger man." It was a common and legitimate strategy for [Counsel] to try and shift the blame from his client to another participant in the crime. [Counsel's] decision to advise [Roudebush] to cooperate with the police and admit his involvement, and in doing so emphasize that he did not pull the trigger, was not an unreasonable strategy. It did not prejudice [Roudebush].

(App. at 54.) The trial court explained Roudebush was not prejudiced by Counsel's actions because he could not show the result would have been different if Roudebush had not talked to the police in light of the ample evidence demonstrating Roudebush's guilt, even without his statement to police.

At the post-conviction hearing, Counsel testified as to his strategy:

Q    Did you have any strategic or tactical reason for allowing Mr. Roudebush to give a statement to the police without first receiving consideration from the State?

A    Yes.

Q    What was that tactical or strategic reason?

A    The reason was my conversation with [the prosecutor] around the time of the initial hearing or after the initial hearing in this cause when [the prosecutor], from what I believed, indicated to me that out of the three co-defendants the interest in consequences for [Roudebush] wasn't as great in his mind as the other two, Mr. Pennington and Mr. Bramley. He indicated to me also that he wasn't necessarily a fan of the felony murder rule.

Q    And so the strategic or tactical reason for having Mr. Roudebush give a statement, it was because [the prosecutor] didn't have – I'm trying to just interpret – it was because [the prosecutor] didn't express as great of an interest in prosecuting Mr. Roudebush as the other two co-

7

defendants?

A       Yes.

Q       How did Mr. Roudebush giving a statement to the police play into that as a strategy or tactic?

A       I believe about the time that we had the conversation, and it may have been in the presence of the detectives in the case but they were interested in [Roudebush] giving a statement. Mr. Bramley and Mr. Pennington had already given statements prior to [Roudebush] being charged. [Roudebush] had not given a statement. There were things in the Bramley statement and the Pennington statement I believe that [Roudebush] had indicated to me that were inaccurate and showed him in a less favorable light so to speak than what had actually occurred.

(Tr. at 12-14.)

Counsel testified he told Roudebush of his right to remain silent, he explained that Roudebush might be able to obtain a better outcome if he cooperated with the police, and he left to Roudebush the final decision as to whether to talk to the police. (*See id*. at 24 (Counsel advised Roudebush that "ultimately it was his decision whether or not he would talk to the police.").) Although Counsel's strategy proved unsuccessful, we cannot find it unreasonable in light of the circumstances facing Roudebush. *See McCullough v. State*, 973 N.E.2d 62, 76 (Ind. Ct. App. 2012) ("an appellate court cannot compare counsel's real-time performance to what might have been done with the benefit of hindsight"), *trans. denied*.

2.       Communicating Plea Offers

Roudebush also contends Counsel should have communicated plea offers from the State. Counsel have a duty to inform their clients of plea agreements offered by the prosecution, and failure to do so amounts to ineffective assistance. *Schmid v. State*, 972 N.E.2d 949, 953 (Ind. Ct. App. 2012). The post-conviction court found, however, that the

State never tendered a formal plea offer.

The prosecutor told Counsel that if Roudebush cooperated with law enforcement and gave a statement, it was possible that his cooperation could result in favorable consideration. Then, after Roudebush talked to the police and provided a statement, Counsel and the prosecutor discussed the possibility a plea might be negotiated, but the parties never arrived at a specific agreement or committed anything to writing. As no formal plea offer was ever made, Counsel had no affirmative duty to convey the contents of the informal plea discussions to Roudebush. *See id.* at 954 (counsel not ineffective for failure to communicate plea discussions to client when no firm offer was made or reduced to writing). Thus, we cannot hold the post-conviction court erred by declining to declare Counsel's assistance ineffective.

## CONCLUSION

As Roudebush has not demonstrated the post-conviction court erred in determining the assistance provided by his trial counsel was not constitutionally ineffective, we affirm the denial of his petition for post-conviction relief.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.