## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 28 2020, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

James Durham
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Durham,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

April 28, 2020

Court of Appeals Case No.
19A-PC-2859

Appeal from the Vanderburgh
Circuit Court

The Honorable Carl A. Heldt,
Judge

Trial Court Cause No.
82C01-1404-PC-6

**Bradford, Chief Judge.**

# Case Summary

[1] In 2005, James Durham pled guilty to two counts of murder and three counts of Class A felony attempted murder, for which he was sentenced to an aggregate term of 210 years of incarceration. On appeal, we affirmed the trial court's denial of Durham's motion to withdraw his guilty plea but found his sentence inappropriate in light of his mental illness, reducing it to 170 years. We affirmed our decision on rehearing, and the Indiana Supreme Court denied transfer.

[2] In 2014, Durham filed his petition for post-conviction relief ("PCR"), alleging ineffective assistance of appellate and trial counsel, and the post-conviction court ordered the parties to proceed by affidavit. The post-conviction court denied Durham's petition in full. Durham contends that the post-conviction court erred by denying him a hearing and PCR. We affirm.

# Facts and Procedural History

[3] The underlying facts leading to Durham's appeal of the denial of his PCR petition are as follows:

> On May 9, 2003, Durham shot Joseph Scales in the neck with a handgun. On May 10, 2003, Durham entered a bar in Vanderburgh County. After exclaiming religious ideations, Durham shot four people, killing two of them. Police arrested Durham shortly thereafter, and a gun found on his person was identified as the gun used in the shootings.
>
> The State charged Durham with two counts of murder [] and two counts of attempted murder, Class A felonies, regarding the

shootings at the bar. The State then added a charge for an Habitual Offender enhancement. Following a hearing, on May 27, 2005, the trial court ordered evaluations to determine Durham's competency and sanity. Two psychiatrists, Dr. Hilton and Dr. Liffick, evaluated Durham, and, after a hearing, the trial court found him to be incompetent to assist with his defense and ordered him committed to the Department of Mental Health. The court noted that Durham was disruptive at that hearing, "as in all previous court appearances." Appellant's App. at 24.

Durham began treatment at the Logansport State Hospital ("Hospital") in December 2003. On March 31, 2004, the Hospital filed its report, which included its determination that Durham was competent, and the trial court adopted that determination. At a hearing on April 13, 2004, the trial court ordered an evaluation to determine Durham's sanity at the time of the alleged offenses. On August 4, 2004, Dr. Liffick filed his psychiatric report regarding Durham's sanity. Dr. Hilton then informed the court that Durham refused to be transported for evaluation. On August 17, 2004, after a hearing, the trial court granted a defense motion to have Durham re-evaluated as to competency.

On August 24, 2004, Durham appeared at a hearing and stated that he did not wish to assert an insanity defense, but he agreed to be evaluated. On August 25, 2004, the trial court ordered new evaluations regarding Durham's competency and his sanity. On September 10, 2004, Dr. Hilton filed a report of his psychiatric evaluation of Durham, and at a hearing on September 30, 2004, at which Durham appeared in person, the trial court again found Durham competent to assist with his defense.

Trial was scheduled to begin on January 10, 2005. At a progress hearing on December 10, 2004, defense counsel requested a weekend continuance to allow Durham to "talk with his family about how to proceed." Id. at 14. The trial court denied that request. On January 7, 2005, three days before the trial was scheduled to start, the sheriff's department informed the court

that Durham had stopped taking his medications "that were prescribed by the psychiatrist at the mental hospital after the court found him to be incompetent to assist in his defense." *Id.* at 12. The court noted that Durham had "returned from the mental hospital and [had been] adjudged competent as a result of [his] taking the medication. [Durham] ha[d] been calm, lucid and responsive in the court room and much different than what he was before he was sent to the mental hospital." *Id.* Defense counsel first learned at 10:30 a.m. that day that Durham had ceased taking his medications, and the jail reported that Durham was "beginning to show symptoms [of his mental illness]." *Id.*

Thereafter, the trial court brought Durham into the courtroom, questioned him, and determined him to be competent. Durham informed the court that the medications had been making him sick. The trial court ordered Durham to take his medications and stated that it would send a psychiatrist to "help give him some medication that won't make him sick . . . ." *Id.* Durham then agreed to start taking his medications again. In response to questioning by defense counsel, Durham stated that he did not think he was competent at that time but would start taking his medications. The trial court denied defense counsel's request to have Durham's competency re-evaluated.

On January 8, 2005, the State filed in open court an additional attempted murder charge, regarding the shooting of Scales. Thereafter, the parties filed a plea agreement, under which Durham pleaded guilty to two counts of murder and three counts of attempted murder, Class A felonies. After questioning Durham, the trial court found that a factual basis for the plea existed and that Durham had entered the plea knowingly, voluntarily, and intelligently.

On January 28, 2005, Durham filed a motion to withdraw his guilty plea. After hearing arguments from both parties, the court denied the motion. On March 1, 2005, the trial court sentenced Durham to sixty years for each murder count and forty-five years for each attempted murder count. The sentences for the murders

and for the first two attempted murder counts were to run consecutive to one another, and the sentence for the third attempted murder count was to run [concurrent] to the other sentences. Durham's total executed sentence was 210 years. This appeal ensued.

*Durham v. State*, 82A04-0504-CR-175 (Ind. Ct. App. April 13, 2006), *aff'd on reh'g*. On direct appeal, Durham argued that the trial court abused its discretion by denying his motion to withdraw his guilty plea and in sentencing him. *Id*. We disagreed with Durham's contention that he was incompetent at the time of his plea, thereby preventing his plea from being voluntary, knowing, and intelligent, and affirmed the trial court's denial of his motion to withdraw his guilty plea. *Id*. We agreed, however, that his sentence was inappropriate in light of his mental illness and reduced his sentence to 170 years. *Id*. We granted Durham's petition for rehearing and reaffirmed our prior decision. *Durham v. State*, 82A04-05-04-CR-175 (Ind Ct. App. August 31, 2006). Durham sought transfer, which was denied by the Indiana Supreme Court. *Durham v. State*, 860 N.E.2d 596 (Ind. 2006).

[4]     On April 17, 2014, Durham filed a PCR petition, which was amended in December of 2014, and the post-conviction court ordered the parties to proceed by affidavit. Durham alleged claims of ineffective assistance of trial and appellate counsel. On November 13, 2019, the post-conviction court denied Durham PCR.

# Discussion and Decision

[5] The standard of review for appeals from the denial of PCR is well-settled. Petitioners who have exhausted the direct-appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Petitioner bears the burden of establishing grounds for PCR by a preponderance of the evidence. *Id*. By appealing from a negative judgment, a petitioner faces a rigorous standard of review. *Wesley v. State*, 788 N.E.2d 1247, 1250 (Ind. 2003). Denial of PCR will be affirmed unless, "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id*. We do not defer to the post-conviction court's legal conclusion but do accept its factual findings unless they are clearly erroneous. *Stevens*, 770 N.E.2d at 746. The post-conviction process does not provide a petitioner with a "super-appeal" but, rather, a "narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules." *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999). Issues that were known and available but not raised on direct appeal are waived, and issues raised but decided adversely are *res judicata*. *Id*.

# I. Denial of Evidentiary Hearing and Subpoenas

[6] Durham contends that the post-conviction court erroneously failed to issue subpoenas and hold an evidentiary hearing regarding his PCR petition. Pursuant to Indiana Post-Conviction Rule 1(9)(b)

In the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing. If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena. Petitioners who are indigent and proceeding in forma pauperis shall be entitled to production of guilty plea and sentencing transcripts at public expense, prior to a hearing, if the petition is not dismissed. In addition, such petitioners shall also be entitled to a record of the post-conviction proceeding at public expense for appeal of the denial or dismissal of the petition.

We review a post-conviction court's decision to proceed under Indiana Post-Conviction Rule 1(9)(b) for an abuse of discretion. *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), *trans. denied*. "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[7] In his motions to the post-conviction court and his appellate brief, Durham has failed to explain why an evidentiary hearing was required or how any witness's testimony would have assisted in the disposition of his PCR petition. At best, his explanation has been merely a recitation of his contentions for PCR or a bald statement that witnesses are necessary for a full and fair evidentiary

determination of the issues. Durham has failed to establish an abuse of discretion in this regard.

## II. Ineffective Assistance of Appellate Counsel

[8] Durham raises numerous specific claims of ineffective assistance of appellate counsel for the first time on appeal. In his PCR petition, Durham merely stated broadly that he received ineffective assistance of appellate counsel without providing any specific argument or cogent reasoning. In denying him relief, the post-conviction court noted that "Petitioner has failed to identify how his appellate counsel provided ineffective assistance nor provide any evidence by way of affidavits or otherwise in support of this argument." Appellant's Br. p. 78. Because Durham failed to raise these specific claims of ineffective assistance of appellate counsel in his PCR petition, they are barred from appellate review. *See Minnick v. State*, 698 N.E.2d 745, 753 (Ind. 1998) (concluding that "[b]ecause the defendant's final amended post-conviction petition did not claim denial of counsel from the failure to request funds, this specific claimed failure is not available in this appeal.").

## III. Ineffective Assistance of Trial Counsel

[9] Durham contends that he received ineffective assistance from his trial counsel.

> This Court reviews claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below

an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment[.] Second, the defendant must show that the deficient performance prejudiced the defendant. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002) (internal citations omitted).

There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Id*. (cleaned up). "There are two different types of ineffective assistance of counsel claims that can be made in regards to guilty pleas: (1) failure to advise the defendant on an issue that impairs or overlooks a defense and (2) an incorrect advisement of penal consequences." *McCullough v. State*, 987 N.E.2d 1173, 1176 (Ind. Ct. App. 2013). The Indiana Supreme Court further explained that

to prove this in the case of claims related to a defense or failure to mitigate a penalty, it must be shown that there is a reasonable probability that a more favorable result would have obtained in a completely run trial. However, for claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in

advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

*Seguara v. State*, 749 N.E.2d 496, 507 (Ind. 2001).

## A. Scrivener's Error

Durham contends that his trial counsel was ineffective for failing to correct a scrivener's error in the plea agreement. The plea agreement requested that the trial court "approve and accept the aforesaid agreement pursuant to I.C. 35-5-6-2." Appellant's Direct Appeal App. p. 318. Indiana Code section 35-5-6-2 was repealed and replaced by Indiana Code section 35-35-3-3 years prior to Durham's guilty plea. Although Durham has directed our attention to this scrivener's error, he has failed to establish any specific facts that would remotely suggest that had counsel discovered this scrivener's error there is an objectively reasonable probability that he would not have entered a plea of guilty.

## B. *Boykin* Rights

Durham claims that his trial counsel was ineffective by failing to object when he was not advised of his *Boykin* rights. "*Boykin* requires that the record must show, or there must be an allegation and evidence which show, that the defendant was informed of, and waived, three specific federal constitutional rights: the privilege against compulsory self-incrimination, right to trial by jury, and the right to confront one's accusers." *Hall v. State*, 849 N.E.2d 466, 469

(Ind. 2006). Because he was advised of his *Boykin* rights and waived them, Durham's claim is meritless. On January 8, 2005, the trial court advised Durham as follows:

> BY THE COURT: I need to repeat some rights and add some rights that you have with regard to all five of these and I want you to listen closely. You are entitled to a speedy and public trial by Court or jury. The State must prove beyond a reasonable doubt that you committed the offenses charged before you could be convicted of them. You have the right to introduce evidence and testify if you so desire, however you cannot be compelled or forced to testify against yourself. The Court will subpoena any witnesses needed for your defense. You have the right to object to the introduction of the evidence and to confront and to cross examine any witness used by the State. If the verdict is against you and you are found guilty you would have the right to appeal, and if you could not afford an attorney the court would appoint an attorney to represent you on that appeal. Do you understand these rights?
>
> BY [DURHAM]: Yes.
>
> BY THE COURT: Do you also understand, Mr. Durham, that be pleading guilty you're giving up all of these rights?
>
> BY [DURHAM]: Yes.

Direct Appeal Tr. p. 52. Durham has failed to establish that his counsel was ineffective in this regard.

## C. Factual Basis

[12] Durham claims that his trial counsel was ineffective for failing to object to an allegedly inadequate factual basis. "A sufficient factual basis can be established

by the defendant's admission that he understands the nature of the crime and understands that his guilty plea is an admission that he committed the crime." *Bates v. State*, 517 N.E.2d 379, 382 (Ind. 1988). This claim is also meritless. On January 8, 2005, the trial court and Durham had the following colloquy:

> BY THE COURT: Now I have this plea agreement in front of me and it recites as you know that in addition to Count V you've also been charged with Count I Murder, Count II Murder, Count III Attempted Murder, a Class A felony and Count IV Attempted Murder a Class A felony. Do you understand the nature of those charges?
>
> BY [DURHAM]: Yes.
>
> [ … ]
>
> BY THE COURT: Do you understand that by your pleas of guilty you are admitting the truth of all the facts alleged in Counts I, II, III, IV and V and upon entry of your pleas the Court will proceed with judgment and sentencing, do you understand that?
>
> BY [DURHAM]: Yes.
>
> [ … ]
>
> BY THE COURT: Now the State says in Count I that in Vanderburgh County, Indiana, on or about May 10, 2003 you knowingly killed Steve Winneke by shooting Steve Winneke … Steven Winneke using a Glock handgun, did you do that, Mr. Durham?
>
> BY [DURHAM]: Yes.
>
> BY THE COURT: In Count II they say that in Vanderburgh County, Indiana on or about May 10, 2003, you knowingly killed

Marsha Fraser by shooting Marsha Fraser using a Glock handgun, did you do that, sir?

BY [DURHAM]: Yes.

BY THE COURT: And in Count III they say that in Vanderburg County, Indiana, on or about May 10, 2003 you attempted to commit the crime of murder by intentionally shooting a Glock handgun at Melony Jones, which conduct constituted a substantial step toward the commission of the crime of murder, did you do that?

BY [DURHAM]: Yes.

BY THE COURT: In Count IV they say that in Vanderburgh County, Indiana, on or about May 10, 2003 you attempted to commit the crime of murder by intentionally shooting a Glock handgun at Barry Rolley which conduct constituted a substantial step toward … toward the commission of the crime of murder, did you do that?

BY [DURHAM]: Yes.

BY THE COURT: And as I told you before in Count V they say that in Vanderburgh County, Indiana, on or about May 9, 2003, you attempted to commit the crime of murder by intentionally shooting Joseph Scales in the neck while using a handgun, which conduct constituted a substantial step toward the commission of the crime of murder, did you do that, Mr. Durham?

BY [DURHAM]: Yes.

Direct Appeal Transcript pp. 51–52, 53–54. Given that there was, in fact, an adequate factual basis, Durham has failed to establish that his counsel was ineffective in this regard.

## D. Consecutive Sentences

[13] Because Durham's trial counsel allegedly failed to advise him of the possibility of a sentence with consecutive terms, he contends that his counsel was ineffective. The record, however, indicates that Durham was advised of the possibility of consecutive sentences and still chose to plead guilty. The plea agreement clearly states that Durham faced a possible sentence between forty-five and 230 years. The plea agreement was signed by Durham and, by signing it, he affirmed that he understood the terms of the agreement and fully discussed them with his counsel. Moreover, in his affidavit responding to Durham's questions in this matter, Durham's trial counsel David Brunner stated that he and co-counsel "reviewed the agreement with [Durham,] thoroughly, and explained it to him in the secured area behind the Courtroom." Appellant's App. Vol. II p. 221. Brunner also stated that he and co-counsel "explained 'consecutive' and 'concurrent' sentencing to [Durham] at length." *Id*. at 223. Finally, at the guilty plea hearing, the trial court explained to Durham that it could run Counts I through IV consecutively for a possible penalty between forty-five and 230 years, to which Durham stated that he understood. Durham has failed to establish that counsel was ineffective in this regard.

## E. Count V

[14] Durham contends that because Count V, Class A felony attempted murder was added after the omnibus date, his trial counsel was ineffective for failing to object to the addition. By agreeing to plead guilty to Count V in this case, the

State agreed to run Count V concurrent to the other four Counts and dismiss the habitual offender enhancement. Not only did Durham's counsel's plea negotiations prevent Durham from facing a possible habitual offender enhancement, they resulted in Count V being run concurrently to the other Counts in this case, rather than the possibility of the State filing the charge in a separate case in which there would be no guarantee of a concurrent sentence. Moreover, assuming, *arguendo*, that Durham's trial counsel should have objected to the addition of Count V once it was added after the omnibus date, Durham has failed to assert any specific facts that establish an objective reasonable probability that competent representation would have caused him not to plead guilty. The post-conviction court's denial of PCR was proper in this regard.

## F. Voluntariness of Plea

Durham claims that his trial counsel was ineffective for failing to adequately challenge that his plea was not given voluntarily, knowingly, or intelligently. On direct appeal, we concluded that

> Durham next contends that the trial court's denial of his motion to withdraw his guilty plea worked a manifest injustice because he was incompetent at the time of his plea. Essentially, Durham is alleging that his plea was not voluntary, knowing, and intelligent. We cannot agree.

*Durham v. State*, 82A04-0504-CR-175 (Ind. Ct. App. April 13, 2006), *aff'd on reh'g.* Given our previous conclusion that Durham's plea was voluntary,

knowing, and intelligent, Durham cannot show that his trial counsel's performance was deficient in this regard.

[16] The judgment of the post-conviction court is affirmed.

Baker, J., and Pyle, J., concur.